## Wilson et al. v. Shepherd.

(Decided May 24, 1932.)

J. M. SPEARS, M. S. BURNS, and HANNAH & VAN SANT for appellants.

C. F. SEE, JR., and WOODS, STEWART, NICKELL & SMOOT for appellee.

OPINION OF THE COURT BY CREAL, COMMISSIONER— Affirming.

This action in equity was instituted in the Lawrence circuit court by David Shepherd against Bertha Wilson and Lee Wilson, her husband, and in the petition as amended it is alleged that plaintiff is the owner of two tracts of land in Lawrence county which are described in the petition, and that the defendant Bertha Wilson is the owner of a tract of land in that county which is also described therein; that the two tracts of land owned by plaintiff adjoin the tract owned by defendant, the dividing line between the land being as follows:

"Beginning at a point where the Raisin line crosses the mouth of Lick Branch and running thence S 70 W 48 poles to a white oak and beech on the side of a hill; thence up the hill N 67 W 32 poles to a white oak."

It is further alleged that the line described in the petition is a common line, and is recognized by the parties as the division line between their respective lands where same abuts or joins the other, but that the parties have been unable to locate the line by agreement, and the defendants have refused to permit a surveyor to run and locate same, although plaintiff has made many requests that this be done. The prayer of the petition is for the appointment of a commissioner to run and locate the line between the lands of the parties and that the lines so run be located as the division line between the land of plaintiff and defendants. Defendants interposed a general demurrer to the petition.

On May 17, 1927, it appears that, upon motion of plaintiff and with the consent of defendants through their attorney, an order was entered appointing C. F. Smith, county surveyor, to make a survey locating the division line between the parties to the action and direct-

ing him to locate same in conformity with the calls of the division line as set out in the petition, and also directing him to make a map or plat showing the line as located and showing any point in dispute between the parties as to the location line and report his findings in writing accompanied by the map and plat.

Thereafter defendants filed answer denying that they had refused a survey to run or locate the line between their land and the land of defendants and alleged that they had gone to considerable expense in trying to satisfy plaintiff, but in each instance he had refused to permit a correct survey, but insisted on the surveyor beginning at a false line or corner, and further alleged that the lands claimed by them had been in the adverse possession of them and those under whom they claimed for half a century, and that there had never been any question or controversy about the lines until plaintiff purchased the small boundary adjoining them.

Some time prior to the 10th day of October, 1928, plaintiff and defendant Bertha Wilson entered into the following stipulation and agreement:

"Lawrence Circuit Court

"David Shepherd, Plaintiff, vs. Bertha

Wilson, et al., Defendants.

"Stipulation and Agreement

"Witness that whereas there is a dispute in this action between the plaintiff and defendants as to the location of the division line between their lands, where the same crosses East Fork near the mouth of Lick Branch, thence south 7 west to a white oak and beech on the side of the hill; thence up the hill North 76 East 34 poles to a white oak.

"It is therefore agreed between the parties that L. E. Wallace, Civil Engineer of Louisa, Kentucky, be and he is hereby agreed upon to establish and locate the aforesaid division line between the parties, and establish and locate this as the true line between the parties to this action. For the purpose of locating said line it is agreed that said engineer shall take and use the deed from D. W. Elswick and wife, J. N. Queen and wife, to W. G. Bolt, recorded in Deed Book 59 page 119 of the Lawrence County

Records of deeds. And said Surveyor shall have the use and benefit of the original deed herein referred to for the purpose of establishing this line.

"It is further agreed and understood between the parties that said Engineer may further receive any authentic information as to the real location of the corner.

"He shall be sworn before acting and shall give to the plaintiff and the defendant five days written notice before beginning the location of said line. Said engineer may call to his assistance any help as may be necessary for the purpose of locating and establishing this line.

"For the purpose of ascertaining where the line crosses East Fork the said L. E. Wallace is hereby directed to begin the running at the two white oaks on the side of the hill, being the southwest corner of John Fannin's land, thence South 7 West 175 poles to a white oak and beech on the side of the hill.

"Bertha B. Wilson.
"David Shepherd."

On October 10, 1928, Wallace, the surveyor mentioned therein, filed a report in which he stated that pursuant to the stipulation and agreement he went upon the land in controversy and checked up all corners and other objects that would be of assistance in the matter, and decided that the true line between the parties to be as follows:

"Beginning at stake at East Fork on the South side of same, just above the mouth of Seed Tick branch (known as Lick Branch) this stake stands South 83 E 39 feet from the south east corner of the new bridge on the Mayo Trail crossing East Fork, thence the following courses and distances (Surface measure) S 11½ W 850 feet to a small sasfras, at the corner of the rail fence, about 25 feet south of a white oak; thence up the hill with a rail fence N 79½ E 172 feet N 85 E 100 feet to a dogwood, S 84 E 250 feet to a sugar tree and two hickories and a walnut at Jay Queen's line, the last three lines were horizontal measurement."

Plaintiff filed exception to this report; the first ground being that in locating the line the surveyor did not follow the order of the court. By a pleading, styled

answer and plea in abatement, defendants set up the agreement of the parties and the report filed by the surveyor Wallace alleging that plaintiff who is bound thereby is barred from further proceedings in this action.

On October 7, 1929, C. F. Smith, the county surveyor filed a report in which he stated that he went upon the land and by deeds from M. S. Burns, master commissioner, to R. C. Jackson, and the deed of appellant, made a survey and map filed with the report; that the call of the second line between the lands in controversy as shown in the Burns deed to be north 67 east 34 poles should read north 76 east 34 poles, and that, by making a survey according to the Raisin line called for in deeds to both tracts, Mrs. Wilson will have the number of acres called for in her deed. Defendants filed exception to this report.

The court sustained the exception to the report made by L. E. Wallace and on final hearing adjudged that prior to the filing of the action defendants did not hold any land by adverse possession and only claimed the land under her deed and to the location of the division line between her land and that of plaintiff. It was further adjudged that the large oak tree, now blown down, on the ridge between the Queen branch and East fork in the Jay Queen line is the tree corner, and that the old white oak stump on the fence of hill facing Lick branch is the true corner and the same mentioned in the deeds as the oak and beech corner, and further that the division line between the land of the respective parties is as follows:

"Beginning on a white oak, now blown down, on the ridge between Queen Branch and East Fork in the Jay Queen line; thence a straight line S 83 degrees 45 Min. W. 571 feet to a white oak stump on the face of the hill facing Lick Branch—the calls white oak and beech. N. 13 degrees E (48p) 792 feet to a stake at the mouth of Lick Branch on the south bank of East Fork at low water mark—from the stake at mouth of Lick Branch the southeast end of the pier of the bridge across East Fork bears N 52 degrees 45 Min. W., 92 feet. Said lines are designated by stakes and marked trees."

From that judgment defendants have appealed.

It is first argued by counsel for appellant that the petition is defective and does not state a cause of action entitling appellee to the relief granted. While the record discloses that appellant filed a demurrer to the petition, it is silent as to any action taken thereon by the court. By answer appellants made an issue and proceeded to trial without objection and without pressing action on the demurrer, and in such circumstances it will be treated as waived. Long v. Howard, 229 Ky. 369, 17 S. W. (2d) 207; Caledonian Insurance Co. v. Cooke, 101 Ky. 412, 41 S. W. 279, 19 Ky. Law Rep. 651; Danville, Lancaster & Nicholasville Turnpike Co. v. Stewart, 59 Ky. (2 Metc.) 119.

It is further argued that appellant has acquired title by adverse possession to an old fence line which is found to be the correct line in the report made by L. E. Wallace and to which exceptions were sustained. There is evidence that R. C. Jackson who formerly owned the land claimed by Mrs. Wilson erected this old line of fencing in the year 1885 and that he and all the succeeding owners down to Mrs. Wilson claimed title to all the land inclosed by this fence. At the time the fence was erected James Buckley owned the land claimed by appellee and same was conveyed by his heirs to appellee. Some of these heirs testified that they only meant to convey to this line of fencing, since they knew that the opposite side had been under the possession and control of Jackson and those claiming under him long enough for them to hold it. Mrs. Wilson acquired her title by deed from her father and mother, W. G. and Mary K. Bolt, but in that deed the description simply refers to abutting owners. In the deed by which W. G. Bolt acquired title, the boundary is given by courses and distances; the first two calls in the deed being as follows:

"Beginning at two white oaks on the side of the hill it being the southwest corner of John Fannin's land thence south 7 W. 175 poles to a white oak and beech on the side of a hill; thence up the hill N. 76 E. 34 poles to a white oak."

Appellee claims to run with this first line from the creek 48 poles to a white oak and beech and thence with the second line. It seems that in giving her deposition Mrs. Wilson did not understand how her land had been described in her deed from her father, but was laboring

under the impression that the first call in question between her land and that of appellee was S. 7 W. 175 poles, and, while she claims to the fence, she was asked these questions and made these answers on cross-examination.

"Q. Do you remember the call S. 7 W. 175 poles to a white oak and beech on the side of the hill? A. I believe I remember that, I am not sure, I have not looked at the deed for quite awhile.

"Q. And where that is, that is what you claim? A. Well, yes, of course."

There is also evidence that Mrs. Wilson stated to a number of persons that she was only claiming to the correct line shown by the deeds. In addition to these admissions on the witness stand, it appears that in the order appointing C. F. Smith to make a survey locating the division line between the parties and to which appellants by their attorney consented, he was directed to make a survey according to the calls in the old conveyance, and, in the agreement between Mr. Shepherd and Mrs. Wilson that L. E. Wallace survey and locate the line, he was directed to begin at the two white oaks on the side of the hill, being the southwest corner of the John Fannin land and running thence S. 7 W. 175 poles to a white oak and beech on the side of the hill. Unquestionably Mrs. Wilson knew that the lines referred to in her agreement with appellee had for years been recognized as the dividing line between the lands in controversy, and that agreement and her admissions on the witness stand are entirely out of harmony with her plea of adverse possession or her claim to any land beyond those lines and are in effect as abandonment and waiver of such plea or claim.

While there is a great diversity of opinion as to the effect of taking possession of lands under a mistake as to the boundary thereof, we find the weight of authority supporting a rule thus stated in 1 R. C. L. 732;

"But if, on the other hand, a party, through ignorance, inadvertence or mistake, occupies up to a given line beyond his actual boundary, because he believes it to be the true line, but has no intention to claim title to that extent if it should be ascertained that such line is on his neighbors' land, an indispen-

sable element of adverse possession is wanting. In such a case the intent to claim title exists only upon the condition that the line acted upon is, in fact, the true line. The intention is not absolute, but provisioned, and consequently, the possession is not adverse.''

See long list of cases cited, note 20, 1 R. C. L. 732. And that rule is not without support in this state. Turner v. Morgan et al., 158 Ky. 511, 165 S. W. 684, 52 L. R. A. (N. S.) 106, and cases therein cited.

There is ample evidence to support the chancellor's finding on the question of adverse possession and as to the correct location of the boundary line between the lands of the litigants.

It is further earnestly argued by counsel that the report made by L. E. Wallace is an award by which appellee is bound. With his report, Mr. Wallace filed the written agreement of parties under which he was acting. The report as well as his evidence shows that he did not follow directions as to how the lines were to be located and without any regard to corners or to courses and distances specified in the agreement, he reported what he conceived to be the true line between the respective parties. He practically admitted on the witness stand that he followed the old fence line which none of the parties claimed to be the true division line between the parties according to any of the former surveys or conveyances. It therefore appears that the court properly sustained the exceptions to his report.

Judgment affirmed.