## Mason v. Barrett et al.

Oct. 15, 1943.

C. R. Luker for appellant.

R. B. Johnson, W. E. Begley and Wm. A. Hamm for appellee.

OPINION OF THE COURT BY JUDGE SIMS—Affirming.

James Mason died on April 15, 1909, and his widow, S. A. Mason, died on October 26, 1916. In 1884 the husband contracted to buy from Jarvis Jackson a farm of 200 acres located in Laurel County. Shortly thereafter Mason became insane, was confined in an asylum until 1902 and his wife carried out his contract and paid for the land, but no deed was ever executed by Jackson. However, it was not denied that Mrs. Mason, or her husband, obtained title by adverse possession, although there is a controversy as to which of them so obtained title. As will be seen later, it is immaterial as to whether the wife or the husband had title to the land as they were each married but once and the children and heirs of one bear the same relation to the other.

The Masons had ten children. A daughter, Kate Mason Barrett, joined by the other heirs, except her brother, J. C. Mason, brought this action against the latter and an incompetent nephew, Roscoe Mason, and his committee. The petition avers both parents died intestate leaving the large number of plaintiffs and the two defendants as their sole heirs-at-law; that the title to the land was in Mrs. Mason from whom plaintiffs and defendants inherited it, and plaintiffs ask that the land be sold and that the proceeds be divided.

J. C. Mason demurred to the petition and without waiving the demurrer filed answer, counterclaim and cross-petition, in which he pleaded that the title to the land was not in his mother but was in his father; that after his parents' death it was sold for taxes and G. W. Ball purchased it at the tax sale and for a good and valuable consideration Ball subsequently conveyed the land to him by a general warranty deed. He specifically pleaded that the property was listed to the heirs for taxation, that the sheriff notified the heirs of the sale, duly advertised same as required by statute and that all statutory requirements were complied with to make a valid tax sale. It was further pleaded that he had been in possession of the property for more than 20 years, paying the taxes thereon and claiming same against all the world and that his adverse possession had ripened into title, which he asked be quieted against the claims of the plain-

tiffs. He pleaded in the alternative and asked that if he were not adjudged the title, then he should be adjudged a lien on the land for the taxes he paid. Also, he sought recovery from S. T. Mason for the value of certain timber it is averred he cut.

Plaintiffs' reply contained the affirmative allegation that J. C. Mason took nothing by virtue of the tax deed nor by the deed from Ball to him, and further averred that the defendant Mason was indebted to his mother's estate for timber cut and for the use of the land for 10 years. A demurrer was filed to the second paragraph of the reply which contained the affirmative matter, and without waiving it a rejoinder was filed traversing the reply.

After considerable proof was taken the cause was submitted to the chancellor who held that the evidence justified no recovery by either side for timber cut, about which no complaint is made in briefs. The chancellor further held that J. C. Mason took no title by virtue of the deed executed to him by Ball, but adjudged Mason a lien on the land in the amounts of taxes he paid. The judgment directed that the land be sold and after Mason had been reimbursed for the taxes, that the proceeds be divided among the heirs in proportion to their respective interests in the land.

J. C. Mason insists that the judgment should be reversed on two grounds: 1. The petition is defective and does not state a cause of action entitling appellees to the relief sought, and although his demurrers to the petition and reply were well taken, the court failed to rule on them; 2. the proceedings in the tax sale were regular and the tax deed passed title to his vendor who purchased the property. Appellees, plaintiffs below, insist (a) that the demurrers were waived when no rulings of the court were obtained thereon; (b) that J. C. Mason had Ball purchase the property for him at the tax sale, and a joint tenant who purchases property at a tax sale does not become vested with title to the entire tract, but his purchase inures to the benefit of all joint owners.

Under strict rules of pleading, the petition did contain conclusions in lieu of averments of fact. But the answer formed an issue and a trial was had without objection and appellant, defendant below, did not press his demurrer to the petition, therefore it was waived. Wil-

son v. Shepherd, 244 Ky. 225, 50 S. W. (2d) 540; Louisville & N. R. Co. v. Hall, 273 Ky. 590, 117 S. W. (2d) 571; Sparks Bus Line v. Spears, 276 Ky. 600, 124 S. W. (2d) 1031. Likewise, appellant did not insist upon a ruling on the demurrer to the reply, but his rejoinder made an issue, hence his demurrer to that pleading was also waived.

Admitting but not deciding that the proceedings. relative to the tax sale and the deed by the sheriff to the purchaser, Ball, were regular in every respect, yet the evidence shows that Ball purchased the land for his. brother-in-law, J. C. Mason, who was a joint owner with those whose interests were being sold, therefore title to the entire land did not vest in Mason when Ball conveyed. it to him, but he took the title in trust for all joint owners. See authorities in the second paragraph below.

Ball had paid the taxes on the land for several years. and Mason advised him to let it be sold for taxes saying, ''I will give you your money back if you are sick of your trade, and the interest on it, and he let it go up and sell.'' Ball got a tax deed on May 7, 1923, and on May 24, 1923, he and his wife, who was Mason's sister, conveyed the property to Mason in consideration of the latter reimbursing him for the amount he paid in taxes, which was. about $40. When Mason reimbursed Ball he paid the latter's wife $50 for her undivided interest in the land upon her paying her proportionate part of the back taxes. Mason admitted his brother Sid paid him some $4 for the latter's part of the back taxes; also, that Sid paid his part of the taxes for eight years and resided on the place until 1932. Mason admits that Willis Barrett, husband of his sister Kate, promised to pay her part of the back taxes on the occasion when Sid was paying his part thereof, which was right after Mason obtained his deed, but Willis never did so.

This record is most convincing that J. C. Mason acting through his brother-in-law, Ball, was the real purchaser at the tax sale. This land was owned jointly by J. C. Mason and the other heirs of his deceased parents and when he became the purchaser, through Ball, at the tax sale the title of the entire tract did not become vested in him, but he took the title for the benefit of all the joint owners, unless they have lost their right by laches. Here, there were no laches as the position of the parties. had not changed and there were no intervening rights or

equities and all parties can be restored to their original rights without injury to any of them. However, J. C. Mason had a lien on the land to secure him in the amount of taxes, with interest, which he paid. Hammonds v. Risner, 280 Ky. 40, 132 S. W. (2d) 533; Chapman v. Aldridge, 228 Ky. 538, 15 S. W. (2d) 454; McGrath v. Smith, 175 Ky. 572, 194 S. W. 806.

Further complaint is made by the appellant that the chancellor failed to reimburse him for several years' taxes he paid. The judgment sets out the amount of taxes he paid each year and directs that he be reimbursed in these particular amounts with interest. If there were any tax bills he paid for which the judgment failed to allow him to recover, he failed to produce proof he had paid them. The judgment allows recovery for all tax receipts he produced and filed.

Perceiving no error in the chancellor's judgment, it is affirmed.