## JACOBUS *et al. v.* CONGREGATION OF THE CHILDREN OF ISRAEL.

1. One who is the owner of the easement of burial in a cemetery lot, or who is rightfully in possession of the same, is entitled to recover damages from any one who wrongfully enters upon such lot and disinters the remains of persons buried therein.

2. In a suit for damages for wrongfully disinterring a dead body, if the injury has been wanton and malicious, or is the result of gross negligence or a reckless disregard of the rights of others, equivalent to an intentional violation of them, exemplary damages may be awarded, in estimating which the injury to the natural feelings of the plaintiff may be taken into consideration.

3. If a monument or gravestone which has been erected at a grave is defaced or removed after the death of the person who erected it, the heirs at law of the person to whose memory the monument or gravestone was erected may recover damages from the one who injures or removes it.

4. Where a petition sets forth a good cause of action for exemplary damages and prays that a designated amount, as exemplary damages, be awarded the plaintiff, "as expenses of bringing these proceedings," the words quoted may be treated as surplusage.

Submitted February 3, — Decided July 20, 1899.

Equitable petition. Before Judge Callaway. Richmond superior court. April 21, 1898.

*Samuel F. Garlington* and *F. W. Capers*, for plaintiffs.
*C. Henry Cohen* and *Russell & Rosenfield*, for defendant.

FISH, J. The defendant in the court below moved to dismiss the plaintiffs' petition, upon the ground that no cause of action was set out therein. The court sustained the motion, and the plaintiffs excepted. The petition alleged, in substance, that the three plaintiffs are the children of Jacob Jacobus, and his wife Manahn, who had born unto them two other children, Harold and Irene, both of whom died in infancy. In January, 1856, Jacob Jacobus purchased of the defendant, a corporation owning and controlling certain burial-grounds located in the city cemetery of Augusta, a certain described lot, or square, in such burial-grounds, and paid for the same. This lot, or square, is inclosed by a row of brick. In 1856 the remains of his infant son Harold, and in 1858 the remains of his infant daughter Irene, were interred by him on this lot. Jacob Jacobus died in 1862, and his wife in 1894. The remains of the plaintiffs' brother and sister remained undisturbed from the dates when they were respectively buried until 1895, when the defendant, through its duly appointed and constituted officers, willfully, unlawfully, and without warrant or authority and without the knowledge of plaintiffs, entered upon such lot, removed the headstones from the two graves, took therefrom the caskets containing the remains of the plaintiffs' brother and sister, opened the caskets and exposed the contents of the same to the view of people, and then reinterred the remains in an obscure part of the defendant's burial-grounds. After removing the headstones and caskets, the defendant sold or gave the lot to another person and permitted him to bury a body therein. The removal of the bodies of the plaintiffs' brother and sister "to an obscure por-

tion of said burial-grounds" was "much to the chagrin, mortification, humiliation, insult and injury" of the plaintiffs, and in the removal and the acts accompanying the same "a most serious injury has been done" to the plaintiffs, and an insult inflicted upon them "which money can not repair and which time can not eradicate." The petition prayed that the officers of the defendant corporation be directed and commanded to reinter the remains of the plaintiffs' brother and sister in the lot from which they had been removed, "in a grave to be walled and securely cemented, as was the grave in which they formerly reposed"; and that "the nominal sum of two hundred and fifty dollars, as exemplary damages, be awarded to   .   .   petitioners, as expenses of bringing these proceedings." At the hearing, counsel for the plaintiffs stated that, since the filing of the suit, the defendant had complied with the prayer of the petition in reference to reinterring the remains upon the lot from which they had been removed, "and that suit was proceeding for the collection of the expenses of this suit, including attorney's fees.'

1. According to the allegations of the petition, Jacob Jacobus, the father of the plaintiffs, purchased the burial-lot from the defendant, paid for it and took possession of it, in the only way that he could, by using it for the purposes for which it was intended—he buried his dead upon it. He had both the possession and the right of possession, and remained in possession until his death. At his death the possession and the right of possession were transmitted to his heirs at law. Having once been established, the possession, unless voluntarily relinquished, continued as long as the graves were marked and distinguishable as such and the cemetery continued to be used. Hook *v.* Joyce, 84 Ky. 450; Bessemer Land Co. *v.* Jenkins (Ala.), 18 So. Rep. 565. "The burial of the dead body in a cemetery lot is the only possession, when claimed and known, necessary to ultimately create complete ownership of the easement so as to render it inheritable; and so long as gravestones stand marking the place as burial-ground the possession is actual, adverse, and notorious." Hook *v.* Joyce, supra. "When one is permitted to bury his dead in a public

cemetery, by the express or implied consent of those in control of it, he acquires such a possession in the spot of ground in which the bodies are buried as will entitle him to an action against the owners of the fee or strangers who, without his consent, negligently or wantonly disturb it. This right of possession will continue as long as the cemetery continues to be used." Bessemer Land Co. v. Jenkins, supra. As a general rule, one who purchases and has conveyed to him a lot in a public cemetery does not acquire the fee to the soil, but only the easement or license of burial therein. But, as we have seen, so long as he is in the rightful possession of the lot, or holds title to the usufructuary interest therein, he may maintain an action against any one who wrongfully trespasses upon it. The rule is well established that one entitled to maintain the action may recover damages from any person who wrongfully trespasses upon, desecrates, or invades the burial-lot of another. 1 Am. & Eng. Enc. L. (2d ed.) 794; First Evangelical Church v. Walsh, 57 Ill. 363; Meagher v. Driscoll, 99 Mass. 281; Partridge v. First Independent Church, 39 Md. 637; Smith v. Thompson, 55 Md. 409; Thirkfield v. Mountain View Cemetery, 12 Utah, 76; Hook v. Joyce, and Bessemer Land Co. v. Jenkins, supra. In the present case, the plaintiffs were not only in possession of the lot at the time of the alleged trespass by the defendant, but, as the heirs at law of Jacob Jacobus, they had a complete title to the easement of burial therein by prescription; for the graves containing the remains of their brother and sister had been upon the lot, undisturbed, for nearly forty years. The presence of these graves, marked with headstones, upon the lot rendered the possession, which commenced in Jacob Jacobus when he buried the first body upon it, actual, adverse, and notorious, and it was continuous until disturbed by the defendant in 1895.

2. In a suit for damages for disinterring a dead body, if the injury has been wanton and malicious, or is the result of gross negligence or a reckless disregard of the rights of others, equivalent to an intentional violation of them, exemplary damages may be awarded. 1 Am. & Eng. Enc. L. (2d ed.) 794; Meagher v. Driscoll, and Thirkfield v. Mountain View Cemetery,

*supra.* Where such an action is maintainable, the injury to the natural feelings of the plaintiff may be taken into consideration in estimating the damages which he has sustained. Cooley on Torts, 240; Meagher *v.* Driscoll, and Bessemer Land Co. *v.* Jenkins, *supra.* Our own code provides that "In every tort there may be aggravating circumstances, either in the act or the intention, and in that event the jury may give additional damages, either to deter the wrong-doer from repeating the trespass, or as compensation for the wounded feelings of the plaintiff." Civil Code, § 3906. According to the allegations of the petition this was clearly a tort in which there were aggravating circumstances. It was, as made by the petition, a case in which a jury could rightly have awarded exemplary damages.

3. Irrespective of the plaintiffs' title to the easement, or their possession of the lot, the petition stated a good cause of action for damages for the removal of the gravestones. If a gravestone or monument which has been erected upon a cemetery lot is defaced or removed, during the lifetime of the person who erected it, he may, at common law, recover damages from the one who inflicted the injury; but if the injury is inflicted after his death the heirs at law of the person to whose memory the gravestone or monument was erected are entitled to maintain the action. Day *v.* Beddingfield, Noy (Eng.), 104; Spooner *v.* Brewster, 3 Bing. (Eng.) 136; Sabin *v.* Harkness, 4 N. H. 415; Matter of Brick Presbyterian Church, 3 Edw. Ch. (N. Y.) 155; Mitchell *v.* Thorne, 134 N. Y. 536; Pierce *v.* Proprietors of Swan Point Cemetery, 10 R. I. 227. If these gravestones were erected by Jacob Jacobus to mark and designate the graves of his children, then if they had been injured or removed during his lifetime, he would have had a right of action against whoever inflicted the injury. While it is not distinctly averred that he did erect them, we think it is a fair presumption that he did, from the fact that he was the father of these infant children, purchased the lot, and had their bodies interred therein. After his death, the right to sue for a trespass committed by defacing or removing the gravestones was in the heirs at law of the persons to whose memory the stones were erected, that is, the heirs at law of the children whose remains

were interred in the graves. Whether the plaintiffs, or either of them, were in life at the time that either of these children died, does not appear from the petition; but if they were not, the father and mother became heirs at law of the deceased children, and at the time the stones were removed by the defendant the plaintiffs were the heirs at law of both the father and the mother. So the right of action belonging to the heirs at law of these children, for the trespass committed by the removal of the gravestones, was in the plaintiffs at the time this injury was inflicted. This is clear when we consider that a monument or gravestone which designated the grave of a particular person was considered by the common law in the nature of a family heirloom, and for this reason the common law, after the death of the person who erected it, gave to the heirs at law of the person in whose memory the stone was set up the right to maintain an action against any one who injured or removed it.

4. The mere fact that the plaintiffs added to their prayer, "that the nominal sum of two hundred and fifty dollars, as exemplary damages, be awarded your petitioners," the words, "as expenses of bringing these proceedings," does not alter the case. These words can be treated as mere surplusage, the statement of the cause of action being complete without them. They could be stricken and the cause of action would remain. Their presence does not have the effect of destroying what would otherwise be a good cause of action. It matters not to what purpose the plaintiffs intended to devote the amount which they might recover as damages. They might, if they saw fit, use the whole of the amount recovered by them in paying counsel fees and other expenses of litigation, incurred by them in bringing and prosecuting to a successful issue the suit to establish and vindicate their rights, which seems to have been their main purpose, and a mere declaration in the petition of a purpose on their part to so use the sum which they might recover as damages could not affect their right to recover such damages. Of course, anything that the defendant did, after the suit was filed, by way of amends for the injury which it had inflicted upon the plaintiffs, unless accepted by the plain-

tiffs as a settlement of the case, would not affect the cause of action, though it might be a circumstance which could be shown in mitigation of the amount to be allowed as damages. As the petition set forth a good cause of action, the court erred in sustaining the motion to dismiss it.

*Judgment reversed. All the Justices concurring.*