### 8127

#### FRINK v. NATIONAL MUTUAL FIRE INS. CO.

Insurance Companies.—A *foreign insurance company cannot relieve itself of liability on a policy issued in this State by showing that it had been placed in the hands of a receiver and had been dissolved some months before the loss, and that notice of the receivership had been published in a newspaper in this State.*

Mr. Justice Watts *dissents.*

Before Copes, J., Richland, Spring term, 1911. Reversed.

Action by L. J. Frink against National Fire Insurance Company and A. C. Wakeley, receiver. Plaintiff appeals.

*Mr. Hunter A. Gibbes,* for appellant, cites: *Appointment of receiver does not affect contracts:* 44 At. R. 82; 17 Ch. Div. 337; 38 L. R. A. 97; 111 U. S. 110; 48 S. C. 74. *Nor does the appointment and notice to establish claims cancel the insurance:* 47 Kan. 309; 16 Ency. 875; 45 Ga. 294; 55

Barb. 55; 155 N. Y. 163; 51 Ill. 342; 40 L. R. A. 765; 38
Id. 98; 10 Me. 393; 38 L. R. A. 101; 34 Hun. 476; 40 Hun.
44; 85 S. C. 485; 43 Ohio St. 359; 34 Md. 27; 55 Md. 284;
94 N. W. 1000; 19 Cyc. 650; 45 Ind. 43; 51 Ill. 342; 86
Ky. 230; 62 Ark. 507; 78 S. W. 341.

*Messrs. Weston & Aycock*, contra, cite: *The appoint-
ment of a receiver and dissolution of the corporation can-
celled all outstanding insurance:* 3 Cool. on Ins. 2810, 2808;
10 Cyc. 1312, 1329; 91 N. Y. 174; 36 At. R. 930; 34 At.
878; Joyce on Ins., sec. 454; 9 Ency. 908, 584.

March 11, 1912. The opinion of the Court was deliv-
ered by

MR. JUSTICE FRASER. One, W. J. Kyser, insured a
dwelling house belonging to him, with the respondent com-
pany, for the term of three years, in the sum of three hun-
dred and fifty ($350.00) dollars, and the loss was made
payable to the appellant, L. J. Frink, as mortgagee.

The insurance company was incorporated under the laws
of the State of Nebraska; the policy was issued on the 23d
day of October, 1907. About the 18th day of February,
1909, the house was destroyed by fire. These facts are
admitted by the defendant, but it alleges that it is not
liable because that on the 4th day of December, 1907, under
proper proceedings in the District Court of Douglass
county, Nebraska, the Court having jurisdiction of the sub-
ject matter, the said company was declared to be insolvent,
the defendant, A. C. Wakeley, appointed receiver, and it
was further adjudged and decreed that the said National
Mutual Fire Insurance Company be, and the same is hereby
dissolved. That Arthur C. Wakeley duly qualified as
receiver and took charge of the property.

The defendant further alleges, that by order of the Court,
made on the 18th day of April, 1908, it was duly ordered
and adjudged, that all persons having any claims of any

kind or nature, against said National Mutual Fire Insurance Company, should present the same to said receiver at Omaha, Nebraska, on or by the first day of August, 1908. That true copies of said order of Court were published in the newspapers of all States in which the National Mutual Fire Insurance Company had transacted business. That a true copy of said notice was published once a week for four weeks in the *News and Courier* of Charleston, South Carolina, prior to August 1, 1908, and that no demand was ever made by the plaintiff on his behalf on account of said claim, prior to or by August 1, 1908.

The defendant further alleges that it has had no legal existence of any kind and for any purpose, since December 4, 1907, when it was dissolved, as above stated.

The defendant, by its answer, submitted itself to the jurisdiction of the Court. To this answer the plaintiff demurred on the ground, first, that the allegations upon their face do not constitute a defense; second, that the facts stated in said allegation are irrelevant to the contract set forth in the complaint and do not constitute a legal avoidance of liability thereunder. Upon this demurrer the cause was tried in the Circuit Court for Richland county, before his Honor, Judge Robert E. Copes, at the Spring term, 1911. His Honor overruled the demurrer, dismissed the complaint and gave judgment for the defendant.

The contract provides: "This policy shall be cancelled at any time at the request of the insured; or by the company by giving five days' notice of such cancellation. If this policy shall be cancelled as hereinbefore provided, or become void or cease, the premium having been actually paid, the unearned portion shall be returned on surrender of this policy or last renewal, this company retaining the customary short rate; except that when this policy is cancelled by this company by giving notice it shall retain only the *pro rata* premium."

The authorities in other States are conflicting and there are none in this State bearing directly on the question, and this case will have to be decided on the general principles of law, as we deem them most applicable.

A corporation of one State has no right to transact business in another State without permission. The State of South Carolina has the right to impose such conditions upon foreign corporations that seek to do business here that its lawmaking department thinks wise and prudent, for the protection of its citizens.

In the case of *John Hancock Mutual Life Insurance Company* v. *Warren,* 181 U. S., page 76, the Supreme Court of the United States said: "The State prescribed the purposes of a corporation and the means of executing those purposes. Their purposes and means are within the State's control. This is true as to domestic corporations. It has even a broader application to foreign corporations and the State Court has held that the statute was a condition imposed on the company on doing business within the State. It was said of it that whatever its limitations were, upon the power of contracting, whatever its discriminations were, they became conditions of the permit and were accepted with it. (Authorities cited.) It was for the legislature of Ohio to dispose the public policy of that State in respect to life insurance and to impose such conditions on the transaction of business by life insurance companies within the State as were deemed best."

In the exercise of this right, the Legislature provided section 1719, Code of Laws South Carolina, 1902: "All and every such foreign corporation carrying on business or owning property in this State, shall be subject to the laws of the same in like manner, as corporations chartered under the laws of this State."

Section 1796 provides "for the deposit with the proper officer of this State of a certificate of the official of some State of the United States, under his hand and official seal,

that he holds on deposit, or in trust, for the benefit of all policyholders or members of such company or association securities worth at least one hundred thousand dollars, or in the absence of such capital or deposit, then with the State Treasurer of South Carolina valid securities aggregating ten thousand dollars or a bond for said amount, made by a solvent surety company, said treasurer shall be the judge of the validity of such securities and bond, which bond shall be conditioned to pay any judgment entered up in any Court of competent jurisdiction in this State, upon a policy of insurance issued to any citizen of this State by any such company, and said judgment shall be a lien upon such securities."

We must assume that the officer has done his duty and has the means at hand to enable the plaintiff to get his money, if he can get his judgment. The securities are to be held to pay judgments of citizens of this State, procured in the Courts of this State. This fund is not provided for the general creditors and may or may not be available for them.

Section 1866 provides: "All corporations, whether they expire by their own limitation or be annulled by the Legislature, or otherwise dissolved, shall be continued bodies corporate for the purpose of prosecuting and defending suits by or against them and of enabling them to settle and close their affairs, to dispose of and convey their property and to divide their capital, but not for the purpose of continuing the business for which they were established."

That means they cannot make new contracts and cannot mean that the corporation is discharged from all liability on existing contracts. "It can be sued," says the statute. The corporation itself has answered. Can it plead that it is dead? It can no more do so than a natural person. If the corporation can appear and answer, it must set up a valid defense. The contract of insurance provides a way in which its liabilities may have been avoided.

That a receiver has no extra territorial authority is too well settled to require the citation of authority. It would have been an easy matter to have procured the appointment of a receiver in this State. For cancellation, the contract required notice and repayment of unearned premiums. The defendant says notice was published in the *News and Courier.* This was an excellent way to give notice, if the proper steps had been taken to make it legal notice.

Amr. & Eng. Ency. of Law, vol. XXI, p. 586, says: (5) "Statements published in newspapers.—A notice, advertisement, or other statement published in a newspaper, if not made pursuant to some statute or judicial order so as to have the legal operation of notice regardless of want of actual knowledge by the person to be charged, does not of itself afford implied or constructive notice to a person who is a subscriber to or habitual reader of that newspaper. In order to charge such person with notice of the fact or statement published it must be proved that he actually read it; in other words, actual notice must be shown."

Unless some law can be found that makes such a publication notice, it is not notice. Notice must be personal unless otherwise provided by law. The defendant had or ought to have had knowledge of the residence of every policyholder and could have tried, at least, to have given notice to every policyholder so that other insurance could have been secured. Here the order and notice required the claims to be filed in Omaha, Nebraska. It may be that if legal notice had been given the policyholder of the dissolution of the corporation before the loss occurred, that would have operated to cancel the policy, and limit the claim of the insured to the unearned premium. But in this case the order of dissolution does not provide for notice to the policyholder, and there is no allegation in the answer that any notice was actually received by him or that constructive notice was given in accordance with any law of Nebraska or of this State.

The laws of South Carolina provide the means of procuring payment of established claims of its citizens in this State and until that fund is exhausted, the citizen of this State is not required to go to a distant State.   If this were not the law then see the anomalous condition.   The State of South Carolina has the right to make conditions upon which a foreign corporation may do business in this State. One of the conditions, in abundant courtesy, is that a foreign corporation may do business with our citizens upon filing a bond with surety for the protection of the citizens of this State.   When the fund is most needed (the corporation insolvent) the whole matter is taken away, and the insolvency of the principal discharges the surety.

The judgment of this Court is that the judgment of the Circuit Court be reversed and the demurrer sustained, and that the cause be remanded to the Circuit Court for such further proceedings as may be necessary.

MR. JUSTICE WATTS, *dissenting*.   I cannot concur in the opinion of the majority of the Court.   The only question before the Court is whether the dissolution of the defendant corporation, and the appointment of a receiver therefor, by a Court of the State of Nebraska, the State which had created the corporation, terminated the outstanding policies of insurance and rendered them nugatory.   There is no question as to the facts.   The insurance company had been dissolved and a receiver appointed at the time of the fire.   The receiver was appointed on December 4, 1907, and the fire occurred on February 18, 1909.   If the policy had been cancelled from any cause the company was not liable.   My opinion is that when the insurance company was, by an order of the Court of competent jurisdiction of the State creating it, dissolved and put in the hands of a receiver that the policy was cancelled.

"It is well settled that an adjudication of insolvency or the appointment of a receiver for an insolvent company

operates as a cancellation of all outstanding policies." *Commonwealth* v. *Mass. Fire Insurance Co.,* 119 Mass. 45; Cooley's Briefs on the Law of Insurance, vol. III, 2810; *Taylor* v. *North Star Mutual Insurance Co.,* 46 Minn. 198. "And the rule is not affected by the provisions in the policies requiring notice to be given to insured when cancellation is desired by the company." *Reliance Lumber Company* v. *Brown,* 4 Indiana 92.

"The executory contracts of a corporation become nugatory after it is forced into an involuntary liquidation and dissolution." *People* v. *Insurance Co.,* 91 N. Y. 174.

"The effect of a valid cancellation is to relieve the insurer from all liability on the policy." *Albany City Fire Insurance,* 40 Illinois 394.

When a receiver was appointed all policies were cancelled, and policyholders became creditors for any accrued claims they then had against the company, and at the time of the dissolution of the corporation and appointment of receiver, the only claim plaintiff had against the defendant was for his unearned premium, and he is not suing for that.

His fire loss was over fourteen months after the receiver was appointed and in my opinion his policy had been cancelled. I think the decree of dissolution by the Court in Nebraska is effectual everywhere, and being dissolved there on December 4, 1907, was dissolved in this State. 9 Am. & Eng. Ency. 908; 10 Cyc. 1329.

I think the judgment of the Circuit Court should be affirmed.