## Brunton et al. v. Roberts et al.

(Decided October 13, 1936.)

570

M. T. WHITWORTH and JOHN D. HARDIN for appellants.

HENRY D. MOORMAN and A. MURRAY BEARD for appellees.

OPINION OF THE COURT BY STANLEY, COMMISSIONER—Affirming.

The case involves the removal of two bodies from a cemetery lot, the portion of which so occupied being claimed by adverse possession by the family of the deceased. The judgment orders the removal by the defendants, and in case they fail, it is to be done by the sheriff.

Buck Grove Baptist Church of Meade county established a cemetery adjacent to the house of worship in 1873. The plot was laid off in 36-foot squares, each containing four lots 18 feet square. Between the blocks 4-foot aisles or lanes were established. When a lot was sold a record was made on the church minutes and the name of the purchaser was indorsed on the original plat of the cemetery. No deed or other instrument was executed. Members of the Roberts family early procured a block; the northwest corner lot, designated as No. 29, being acquired by George Roberts. Afterward the southwest corner of the adjacent block, designated as lot No. 30, was purchased by John Brunton. These lots were separated by a 4-foot aisle. A similar intersecting aisle bounded both lots on the west. It appears that these and other lots in the cemetery were originally laid out by wood stakes, but the evidence is conflicting as to whether or not these, or any other markers, were there in 1915. The cemetery generally had been permitted to grow up in weeds and grasses so as to obliterate many of the marks separating the lots and aisles. The graves and monuments were not in alignment or located with exact regularity.

When Mrs. Mollie Bell Brunton died in 1915 her brother located the place for her grave at the request of her husband, John Brunton. It was at a point, he testified, which Mr. Brunton had previously shown him to be within the boundary of his lot. This was about 5 feet from the grave of Mrs. Roberts, who had been buried in 1889. When John Brunton died in 1926 he was buried next to his wife. During the subsequent years these two graves and another in the center of the lot, and the intervening space, were cared for as being the Brunton lot. Perhaps better attention was given this than the average lot in the cemetery. According to Dr. Roberts, brother of George Roberts, in 1929 he discovered that Mrs. Brunton's grave was on his lot, but there is some contradictory proof that at that time Dr. Roberts thought his line did not embrace it. At any rate, in 1932 or 1933, when a committee or association was clearing up the cemetery, it was definitely disclosed that Mrs. Brunton had been buried wholly within the Roberts' lot and Mr. Brunton partly within it and partly in the aisle. Ultimately this suit was brought by members of the Roberts family and the Buck Grove Cemetery Association against members of the Brunton family to require the removal of the bodies. The defense was a plea of adverse possession and laches. The affirmative response was that both families had been in possession of that portion of the ground during the years, and as to laches, that the defendants had not learned of the true situation until the year 1929.

Ordinarily, the purchaser of a lot in a cemetery acquires only an easement or license to make interments therein exclusive of others. This right of sepulture is a property right, subject to reasonable rules and regulations governing the cemetery, and, of course, to be controlled by the state in the exercise of its police powers. When that right is violated, the owner is as certainly entitled to all the remedies which the law affords as if he owned a fee simple. Of lesser degree, yet substantial, is the property which the owner of the burial lot has in the avenues and driveways. It is the right to the free and unobstructed use in order to have access to his lot. This property descends to the lineal descendants of the owner unaffected by any devise, and the right of possession, unless voluntarily relinquished, continues as long as the graves are marked and distinguishable

and the cemetery continues to be used. Accordingly, a lot owner's remedy is commensurate with his rights. Equity will enjoin an unwarrantable disturbance or interference with the burial ground or the graves therein. It will, as well, protect the lot from invasion by a trespasser, so that the removal of bodies wrongfully buried therein may be commanded. Dickens v. Cave Hill Cemetery Co., 93 Ky. 385, 20 S. W. 282, 14 Ky. Law Rep. 347; Hook v. Joyce, 94 Ky. 450, 22 S. W. 651, 652, 15 Ky. Law Rep. 337, 21 L. R. A. 96; Hertle v. Riddell, 127 Ky. 623, 106 S. W. 282, 32 Ky. Law Rep. 477, 15 L. R. A. (N. S.) 796, 128 Am. St. Rep. 364; 11 C. J. 60, 61, 5 R. C. L. 245; Sherrard v. Henry, 88 W. Va. 315, 106 S. E. 705, 21 A. L. R. 645; Sacred Heart of Jesus Polish National Catholic Church v. Soklowski, 159 Minn. 331, 199 N. W. 81, 33 A. L. R. 1427.

It is generally accepted that the foregoing right or title may be acquired by prescription, and it cannot be defeated even by the record owner of the soil. Conversely, title may be lost by entry and continuous adverse possession by another, according to the statutory and other legal requirements. The possession must be under color of title, although the courts are not quite in accord as to what must be the nature or character of use in order to constitute possession, such as the sufficiency of the mere presence of the body without care or improvement of the plot of ground. Likewise, there is some difference as to whether it is confined to the space occupied by a body, or covered by graves, or the entire plot. Sherrard v. Henry, supra; 2 C. J. 71; 2 C. J. S., Adverse Possession, p. 548. We held in Hook v. Joyce, supra, that "burial of the dead body is the only possession, where claimed and known, necessary to ultimately create complete ownership of the easement, so as to render it inheritable. And as long as it is inclosed as a burial place, or even, without inclosure, as long as gravestones stand marking the place as burial-ground, the possession is, from the nature of the case, necessarily, and therefore in legal contemplation, actual, adverse, and notorious."

Without recitation of the evidence, we think the Bruntons' occupancy of the portion of the Roberts lot was because they regarded it as their property. It was notorious and adverse in the general sense for more than the statutory limitation period of 15 years. Never-

theless, there is a principle of law of prescriptive rights applicable which bars a legal recognition of title in them and consequently prevents a successful resistance of the injunction requiring removal of the bodies.

We are sure in our conclusion that the burial of these two bodies within the aisle and the Roberts lot was due entirely to a mistake as to the location of the boundary line. As we have said, it is pretty well shown that the corner markers of the lots had been obliterated and the cemetery overgrown. John Brunton had acquired title to lot No. 30 by purchase, and there would have been no desire or occasion to go outside of it in putting away his wife. He and his descendants have claimed that lot and no more. The answer alleged:

"Said bodies are duly and regularly buried upon the lot and space of ground owned and controlled by the Brunton family and originally sold to them, set aside and designated for the special use and enjoyment of the Brunton family and of members thereof by the governing authority of said cemetery, and that said space where said bodies are buried is now possessed by the owner thereof, the said bodies and the Brunton family and these defendants as members thereof under their said ownership."

Because the intention to hold as his own is provisional and not absolute, where one through ignorance, inadvertence, or mistake as to the true location of his boundary line enters into possession of his neighbor's land beyond his own limits up to a certain line in the belief that it is the true line, his claim thereto cannot ripen into title. The encroachment was unintentional. Hence an indispensable element of adverse possession is missing, for the intent to claim ownership determines the character of possession. In such circumstances, the claim was only upon condition that the line acted upon was in fact the true line. Such occupancy is deemed amicable and not hostile. That is the general weight of authority and the law in this jurisdiction. 1 R. C. L. 732; 1 Amer. Jur. 916; 2 C. J. S., Adverse Possession, p. 632; Turner v. Morgan, 158 Ky. 511, 165 S. W. 684, 52 L. R. A. (N. S.) 106; Stratton v. Syck, 176 Ky. 750, 197 S. W. 389; Heinrichs v. Polking, 185 Ky. 433, 215 S. W. 179; Brookshire v. Hughes, 203 Ky. 174, 261 S. W.

1109; Wilson v. Shepherd, 244 Ky. 225, 50 S. W. (2d) 540. The rule is clearly applicable to the case in hand. This fact distinguishes it from the cases cited by the parties where there were unequivocal holdings and claims to title to cemetery lots, or portions thereof, which had ripened by prescription in opposition to paper title.

In the whole consideration of the merits of their appeal, the appellants point to some lack of regularity and orderliness in location of graves in this country churchyard, and invoke the policy of the law to protect the dead from disturbance and maintain the sanctity of the grave, except in cases of necessity or for laudable purposes. That policy, written into the statute books and the judicial decisions, came to us from the ecclesiastical law. The natural desire of most of us that there shall forever be an uninterrupted repose of our own bodies, and a considerate regard for the sensibilities, reverence, and love of the kindred and friends of the deceased, demand that sepulchers shall not be violated except for compelling reasons. These tender sentiments are instincts of humanity written deep in the hearts of men, and cannot be ignored. The aversion to disturbance of his remains—it being an ordinary practice of the times to transfer bones from graves to the charnel-house— doubtless originated the choice by Shakespeare of his own epitaph:

"Good frend, for Jesus sake forbeare
To digg the dust encloased heare;
Bleste be the man that spares thes stones,
And curst be he that moves my bones."

These considerations are not without weight. But justice must rise above sentiment, and it is the duty of the courts to apply the law when it is invoked. The circumstances of the case seem to warrant its application, the feelings of the parties to the contrary notwithstanding. The appellees are entitled under the law, as we have shown, to have the bodies removed and the unfortunate mistake corrected.

The plea of laches is unavailing. Laches is not merely delay, but delay that works a disadvantage to another. Kennedy v. Denny, 237 Ky. 649, 36 S. W. (2d) 41; Vansant's Ex'x v. Gardner's Ex'x, 240 Ky. 318, 42 S. W. (2d) 300. We perceive no disadvantage to the

appellants by reason of the delay on the part of the appellees. Conditions have not changed. The same sentiment prompting objections to removal existed soon after burial as at this later period.

We are of the opinion, therefore, that the judgment was proper. It is affirmed.