## Begley et al. v. Shearer et al.

June 13, 1947.

Ray C. Lewis, Judge.

Allen Harrison for appellee.

OPINION OF THE COURT BY JUDGE SIMS—Affirming.

In this action adjoining owners seek to quiet title to their respective tracts of land. The controversy arose over the location on the ground of the dividing line between them running from a black walnut North 22, East 37½ poles to a stone located in the old county road. The correct location of this line settles the controversy.

After much proof was heard by depositions, the chancellor dismissed appellants' petition and adjudged appellees to be the owner of the land described in their counter-claim and quieted their title. He further ad-

judged that the boundary line between the parties begins at a black walnut stump and runs North 22, East 37½ poles to a stone located in the old county road, as is shown on the map filed by appellees' surveyor, Ralph Skiff.

In seeking to reverse the judgment appellants contend: (a) That the chancellor's findings are not supported by the evidence; and (b) that the deed to appellees was champertous under KRS 372.070 as to the land in controversy, as appellants were in the adverse possession thereof at the time appellees' deed was made.

As is not unusual in such cases, the proof is rather voluminous and we will not attempt to go into detail in analysing it, but will content ourselves with making only such references thereto as show it supports the chancellor's judgment.

Both parties prove title from a common source, John W. Hawkins. Appellants' immediate grantor T. F. Abney, and wife, by a deed dated March 19, 1931, conveyed to them 10 acres, which was not described by courses and distances but by the boundary. This deed recites that the 10 acres consist of parts of two separate tracts of land, one of which, as shown by a deed to Abney, contains 2 acres, is triangular in shape and has this western boundary: "Beginning at a stone by a large stump on the edge of the McKee old county road, running S. 22, W. 37½ poles to a black walnut in Mary Cornelius line."

The first three calls in appellees' deed (the only calls with which we are concerned) read: "Beginning in the center of the old state road corner to Hardin Moore, now I. T. Baker; thence S. 51 E. 8½ poles to a stone, corner to Frank Abney; thence N. 41½ E. 43¾ poles to a black walnut, corner to Frank Abney; thence N. 22 E. 37 ½ poles to a stone, corner at the old county road." The same three calls in the deed from John W. Hawkins to appellees' grantor reads: "Beginning in the center of the state road, corner to Hardin Moore, now I. T. Baker; thence N. 51 E. 8½ poles to a stone, corner to Frank Abney; thence N. — W. 42¾ poles to a black walnut to Frank Abney; thence N. 22 E. 37½ poles to a stone corner at the old county road, corner to Frank Abney." It will be noticed that practically the only

difference in these calls in the respective deeds is that their directions are reversed.

Appellants register a vigorous complaint because appellees' surveyor ran the first two lines in reaching the walnut stump as they appeared in appellees' deed rather than running them as they appeared in the deed to appellees' grantor. But, appellants' surveyor, Durham, testified that these first two calls in the deed to appellees' grantor were evidently wrong as to the direction in which they ran and that they must be reversed, otherwise these two lines would go in the opposite direction from that intended, and the survey would not close. It is patent that the first two calls in the deed to appellees' grantor are erroneous as to the directions in which they run and that they were corrected when the land was conveyed to appellees. When these first two calls in appellees' deed were properly run the walnut (now a stump) was found, and by running N. 22 E. 37½ poles from that stump appellees' surveyor hit the stone on the old McKee road.

Elizabeth Begley testified that in 1924 she saw a walnut tree with three hacks on each side of it at the point she now claims to be the true walnut corner, as shown at point No. 5 on the map filed by her surveyor, Durham. She said the tree is now gone and that she told her attorney, "the poles came out near a sink hole, or a depression, and he suggested that the walnut corner tree may have stood at this hole, and to go examine that." She went alone to this depression and found a walnut stump in a pine tree-top some 35 yards from the hole, and certain men she named dug in the hole and found a piece of a walnut root, "and it fit the stump where it had been chopped off." Mrs. Begley's account of how she found the walnut stump and the root of it in the depression at the point where she claimed the tree formerly stood, has rather a fantastic ring and the chancellor was justified in not basing his decision upon her testimony.

Frank Baker testified for Mrs. Begley to the effect that about 1925 John W. Hawkins in trying to sell him a small tract of land showed witness a chestnut stump and a stone in the south side of the county road, also a black walnut tree which had been marked on both sides

as a corner between Hawkins and Abney, which tree stood at the place Mrs. Begley testified the walnut stump had been dug up. But Baker's testimony was weakened by the fact that Elias Shearer, Hobert Bowman and John W. Young all testified he was not entitled to belief on oath and that his moral character was bad; that he was often called "Sheepie" Baker because once he was accused of stealing sheep. Baker when recalled as a witness admitted he had been charged with stealing sheep. Assuredly, the chancellor was justified in not following Baker's testimony.

E. E. Durham, appellants' surveyor, testified there are no calls or distances in any of the deeds he ran from the known poplar corner whereby he could have reached the hole, or depression, where Mrs. Begley claimed the walnut stump had been dug up. Likewise, he testified there are no deeds in the record whose calls would take him to the walnut stump located by Skiff, appellee's surveyor. But Durham is mistaken as to this last statement because when the first two calls in the deed to appellees are run, the walnut stump is reached. Of course, this stump would not be found by running the first two calls in the deed to appellees' grantor because these calls are erroneous as they appear in that instrument.

The record shows that Frank Abney was in the hospital and could not testify. However, Charles Abney, a brother of Frank, testified that Frank and John W. Hawkins pointed out to him the walnut and the stone corners to the line N. 22 W. 37½ poles and that they were as located by appellees' surveyor, Skiff. Richard Van Winkle saw John W. Hawkins point out this line to W. R. Settle when on a land deal, and he placed the walnut and stone at the same place as appellees now put them.

Appellants are correct in saying that champerty need not be specifically pleaded but may be proved under the general issue. Stephenson Lumber Co. v. Hurst, 259 Ky. 747, 83 S. W. 2d 48. From this record it is apparent that Mrs. Begley is claiming under her deed to the dividing line between her and appellees as is shown in her deed, and this claim upon her part is not sufficient to establish such adverse possession as will make ap-

pellees' deed champertous. The rule is that where an occupant of land intends to claim to the boundary shown in her deed and is mistaken as to where the line lies on the ground and she occupies adjoining land, such occupancy is not so adverse as to make a deed to another champertous. Brunton v. Roberts, 265 Ky. 569, 97 S. W. 2d 413, 107 A. L. R. 1289; Kinder v. Ramey, 267 Ky. 312, 102 S. W. 2d 32.

As the evidence abundantly supports the finding of the chancellor and as appellees' deed was not champertous, the judgment is affirmed.