80 So.2d 227

SMITH and GASTON FUNERAL DIRECTORS, Inc.

v.

Alfred DEAN et al.

6 Div. 637.

Supreme Court of Alabama.

March 24, 1955.

Rehearing Denied May 26, 1955.

G. P. Benton, Fairfield, and Wm. L. Clark, Birmingham, for appellant.

602

Wm. B. McCollough and Kingman C. Shelburne, Birmingham, for appellees.

GOODWYN, Justice.

Alfred Dean and his sister, Sadie Hooper, plaintiffs below and appellees here, brought action against Smith and Gaston Funeral Directors, Inc., defendant below and appellant here, seeking punitive damages for maliciously, intentionally and wantonly trespassing upon the grave of plaintiffs' deceased brother, Will Dean. This appeal is from the judgment of the circuit court rendered pursuant to a jury verdict awarding damages of $2,500. Defendant's motion for a new trial was overruled.

As finally presented to the jury, the complaint consisted only of count 4, which was as follows:

"Plaintiffs claim of the defendant the sum of Fifty Thousand & no/100 ($50,000.00) Dollars as damages for that heretofore on to-wit: during the months of May, June, July and August, 1950, the defendant through its agents, servants or employees, while acting within the line and scope of their employment, did maliciously, intentionally and wantonly trespass upon a lot or plot of land situated in the burying ground or graveyard known as the Grace Hill Cemetery in the City of

Birmingham, Jefferson County, Alabama, which was, at said time, in the possession of the plaintiffs and had been in the possession of the plaintiffs for a long period of time prior thereto, and said Grace Hill Cemetery had, for a long number of years, been used by the general public as a burial ground or a graveyard. The plaintiffs aver that the defendant thru its servants, agents and employees, while acting within the line and scope of their authority as such, did on said date, intentionally, maliciously and wantonly trespass upon, desecrate, interfere with and destroy said grave of plaintiffs' deceased brother, who was buried on said lot or plot in said cemetery, and did intentionally, maliciously and wantonly interfere with, enter upon, dig up, plow and cover over and around the grave of the plaintiffs' deceased brother, destroying the ground, marker, concrete slab and all other identifications of said grave placed thereon by the plaintiffs and did otherwise intentionally, maliciously, and wantonly interfere with and desecrate the grave of the plaintiffs' deceased brother, totally obliterating said grave, and plaintiffs have been wantonly injured and claim of the defendant punitive damages."

Defendant's demurrer to the complaint being overruled, issue was joined on defendant's plea in short by consent.

It appears from the evidence that plaintiffs obtained a burial policy on the life of their brother, Will Dean, from the Southern Burial Association; that the premiums on this policy were paid by plaintiffs; that when Will died, Alfred turned the policy over to the Southern Burial Association; that Alfred and Sadie then went to Grace Hill Cemetery and personally selected the grave site for Will's burial; that Southern Burial Association, pursuant to its contract with Alfred and Sadie, paid $10 to Grace Hill Cemetery for said burial site; and that Will was buried there on May 5, 1943, Alfred and Sadie being present at the time.

It further appears that, shortly after Will's burial, Alfred, for himself and Sadie, arranged with the cemetery caretaker for placement of a concrete slab on Will's grave. When placed, the slab covered the grave site sold by Grace Hill Cemetery for Will's burial except for a space at the foot which was left open for flowers or grass. The slab was rectangular in shape and was supported by a "curb", 18 to 20 inches thick, which extended into the ground about 10 inches and was about 9 or 10 inches above ground. At the head of the slab there was a raised "head piece made out of concrete" inscribed with Will's name, his date of birth and death, and with the words "At Rest". From the time of the burial until the early part of 1950, Alfred visited Will's grave some 40 to 50 times, at more or less regular intervals, and kept the grave free of weeds. During this time, Alfred was a resident of Jefferson County, Alabama, and Sadie resided out of the State. At the time of Alfred's last visit in 1950 the grave marker was clearly visible and was 8 or 10 inches above the top of the ground. He testified that about a year later he went to the cemetery to visit the grave but was unable to locate it; that when he went to the spot where he had been going he "didn't see anything, no marker or nothing", "didn't see anything but the green grass and the ground, and * * * didn't see any marker whatsoever", "wasn't nothing there visible but the ground and grass", and that "not a bit" of the concrete slab was visible. He made inquiry of the caretaker as to the grave but they were unable to locate the grave site until several days before the filing of this suit on January 22, 1952.

It further appears that the defendant acquired the Grace Hill Cemetery in 1948 and during the months of May, June, July and August, 1950, cleared that part of the cemetery where Will's grave was located of an accumulation of weeds, grass and vines. This work was done both by manual labor and by machine. After Will's grave site was located, it was found that the slab had been broken in several places and been caused to settle.

The position taken by defendant is that "the plaintiffs did not establish the elements essential to the maintenance of an action of trespass, as distinguished from an action of trespass on the case", because plaintiffs failed to prove their title to or actual possession of the grave site. Incident to that contention, defendant takes the further position that since, as contended, the action is one in case and not in trespass, the cause is barred by the statute of limitation of one year, Code 1940, Title 7, Sect. 26, and does not come within the limitation of six years, Code 1940, Title 7, Sect. 21. Section 21 provides that "actions for any trespass to real or personal property" are barred unless commenced within six years. Section 26 provides for a limitation of one year for "actions for any injury to the person or rights of another, not arising from contract, and not herein specifically enumerated".

■ It is apparent that if the action is in case it is barred by the statutory limitation of one year; if in trespass it is not barred. There is no difficulty in reaching the conclusion that the action is in trespass and, hence, is not barred. Southern Railway Co. v. Sanford, ante, p. 5, 76 So.2d 164, 166, 167; Crotwell v. Cowan, 240 Ala. 119, 121, 198 So. 126.

The principle discussed in the specially concurring opinion in Holder v. Elmwood Corporation, 231 Ala. 411, 165 So. 235, has no application here. In that case, the damages were for mental suffering which distinguishes the discussion there made from the case now before us, which, as we have noted, seeks only punitive or exemplary damages. We take occasion here to note that the special concurrence in that case was by only three members of the court.

■ One of the errors assigned is the action of the trial court in overruling the demurrer to the complaint (Count 4, supra). The specific objections to Count 4 are that "it fails to contain a description of the locus in quo sufficient to put defendant on notice of same"; that it fails "to give the location of the grave site alleged to have been trespassed upon"; and that "it also fails to give the name of the deceased brother alleged to have been buried in the grave in question". In Bessemer Land & Improvement Co. v. Jenkins, 111 Ala. 135, 18 So. 565, 567, 56 Am.St.Rep. 26, a father brought an action of trespass *quare clausum fregit* for unlawfully invading a burial lot and exhuming and carrying away the body of his child. Examination of the original record discloses that there was no allegation as to the name of the child. The premises upon which the trespass was said to have been committed were thus described in the complaint:

"'That the lot or close in which the body of said child was buried is situated in a burying ground or graveyard near Bessemer in said Jefferson county, which burying ground or graveyard is now included in the land occupied by the Pipe Works Co. in or near said Bessemer, which said burying ground or graveyard had been for many years before that time used and occupied as a burying ground or graveyard by the public, having been set apart, or dedicated by defendant Co. as and for a public burying ground or graveyard.'"

A demurrer taking the point that the premises were not described with sufficient definiteness was overruled. In holding that the demurrer was properly overruled, this court, per Haralson, J., said:

"The close alleged to have been broken by defendant, is not described in the complaint with definite particularity, but sufficiently so, to prevent the defendant from being misled or uncertain as to the particular *locus in quo* of the trespass complained of. If a more accurate description had been made, it would have given the defendant no better information as to the *venue* of the realty, than that furnished by the complaint. 2 Chit.Pl. 609. The demurrer which questioned the sufficient accuracy of the lot or close which plaintiff alleges defendant broke and trespassed on, was properly overruled."

On authority of that case, we conclude that overruling the demurrer to the complaint in the instant case was without error.

■ We come now to consider the principal question presented, that is, whether plaintiffs had such an interest in the plot as will support their action of trespass. Our view is that they did. While it does not appear that there was any sort of deed or conveyance executed by the cemetery owners to the plaintiffs, or to the Burial Society for plaintiffs' benefit, it is not controverted that a valuable consideration was paid to the cemetery owners for the right of burial and that Will Dean was buried in the plot with the knowledge and consent of the owners.

■ One who buys the privilege of burying his dead kinsmen in a public cemetery thereby acquires no general right of property. He acquires only the right to bury the dead, for he may not use the ground for any other purpose than such as is connected with the right of sepulture. Beyond this, his title does not extend. He does not acquire, in the strict sense, an ownership of the ground; all that he does acquire is a right to use the ground as a burial place. However, when a purchaser has thus acquired possession, or the right thereto, such possession is exclusive in him as long as the cemetery is lawfully used for burial purposes. And so well recognized is that right that he may maintain trespass *quare clausum fregit* against anyone unlawfully interfering with the same whether by the owner of the fee or by a stranger. Bessemer Land & Improvement Co. v. Jenkins, 111 Ala. 135, 147, 18 So. 565; Dwenger v. Geary, 113 Ind. 106, 14 N.E. 903; Jacobus v. Congregation of Children of Israel, 107 Ga. 518, 33 S.E. 853, 73 Am. St.Rep. 141; Kelly v. Tiner, 91 S.C. 41, 74 S.E. 30, 33; Matthews v. Forrest, 235 N.C. 281, 69 S.E.2d 553, 556; Johnson v. Kentucky-Virginia Stone Co., 286 Ky. 1, 149 S.W.2d 496, 498; Brunton v. Roberts, 265 Ky. 569, 97 S.W.2d 413, 415, 107 A.L.R. 1289; Mansker v. City of Astoria, 100 Or. 435, 198 P. 199, 205, 199 P. 381; 10 Am.Jur.Cemeteries, Sect. 22, pp. 503, 504; 14 C.J.S., Cemeteries, § 36, pp. 95, 96. For annotation, see 172 A.L.R. 554.

As thus stated in Bessemer Land & Improvement Co. v. Jenkins, supra:

"It would seem, therefore, to accord with right principle and authority, that where one is permitted to bury his dead in a public cemetery, by the express or implied consent of those in proper control of it, he acquires such a possession in the spot of ground in which the bodies are buried, as will entitle him to action against the owners of the fee or strangers, who, without his consent, negligently or wantonly disturb it. This right of possession will continue as long as the cemetery continues to be used; * * *."

The Supreme Court of Georgia quoted the foregoing approvingly in Jacobus v. Congregation of Children of Israel, supra [107 Ga. 518, 33 S.E. 854], and there said:

"According to the allegations of the petition, Jacob Jacobus, the father of the plaintiffs, purchased the burial lot from the defendant, paid for it, and took possession of it, in the only way that he could, by using it for the purposes for which it was intended,—he buried his dead upon it. He had both the possession and the right of possession, and remained in possession, until his death. At his death the possession and the right of possession were transmitted to his heirs at law. Having once been established, the possession, unless voluntarily relinquished, continued as long as the graves were marked and distinguishable as such, and the cemetery continued to be used. * * * As a general rule, one who purchases and has conveyed to him a lot in a public cemetery does not acquire the fee to the soil, but only the easement or license of burial therein. But, as we have seen, so long as he is in the rightful possession of the lot, or holds title to the usufructuary interest therein, he may maintain an action against any one who wrongfully tres-

passes upon it. The rule is well established that one entitled to maintain the action may recover damages from any person who wrongfully trespasses upon, desecrates, or invades the burial lot of another."

From Kelly v. Tiner, supra [91 S.C. 41, 74 S.E. 33], is the following:

" 'If one has been permitted to bury his dead in a cemetery by the express or implied consent of those in proper control of it, he acquires such possession in the spot of ground in which the bodies are buried, as will entitle him to maintain an action of trespass "quare clausum fregit" against the owners of the fee or strangers who, without his consent, negligently or wantonly disturb it.' "

The Supreme Court of North Carolina, in the course of its opinion in Matthews v. Forrest, supra [235 N.C. 281, 69 S.E.2d 556], had this to say:

"The complaint alleges by implication rather than in direct terms that the plaintiff maintained and used the spot of ground designated as his grave lot as a place for the burial of his dead pursuant to permission given him by the owner of the fee, i. e., Neill's Creek Baptist Church. This implied averment is equivalent to an allegation that the plaintiff had actual possession of the grave lot at the time of the alleged trespass. This is necessarily so because one cannot well exercise acts of dominion over a place of sepulture or put it to the ordinary use for which it is adapted except by maintaining and using it as a place for the burial of the dead. The Supreme Court of South Carolina undoubtedly had this factual truth in mind when it held that one who has been permitted to bury his dead in a cemetery acquires such possession in the spot of ground in which the bodies are buried as will entitle him to maintain trespass against

the owners of the fee or strangers who, without his consent, negligently or wantonly disturb it. Kelly v. Tiner, 91 S.C. 41, 74 S.E. 30."

In Johnson v. Kentucky-Virginia Stone Co., supra, it was held that although plaintiffs did not own the fee in the land occupied by their brother's grave, they nevertheless had a right which could not be unlawfully destroyed or disturbed by the owner of the fee; that such right is sometimes referred to as a mere easement, privilege, or license, but that it is, however, a right which entitles the next of kin of the dead person to maintain an action against the owners of the fee or strangers who, without right, knowingly and wantonly disturb the grave.

From Brunton v. Roberts, supra [265 Ky. 569, 97 S.W.2d 415], is the following:

"Ordinarily, the purchaser of a lot in a cemetery acquires only an easement or license to make interments therein exclusive of others. This right of sepulture is a property right, subject to reasonable rules and regulations governing the cemetery and, of course, to be controlled by the state in the exercise of its police powers. When that right is violated, the owner is as certainly entitled to all the remedies which the law affords as if he owned a fee simple. * * * Accordingly, a lot owner's remedy is commensurate with his rights. * * *"

The Supreme Court of Oregon had this to say in Mansker v. City of Astoria, supra [100 Or. 435, 198 P. 205]:

"Although the conveyance of a plot of ground for burial purposes does not transfer an absolute right of property, it does pass a privilege or license to make interments in the plot purchased, exclusively of others, so long as the place remains a cemetery. 11 C.J. 60.

\* \* \* \* \* \*

"The right vested in a purchaser is one which like every other right is

entitled to the protection of the law; and the purchaser or those succeeding to his interest may recover damages for any desecration or unlawful disturbance of a grave and may likewise when necessary invoke the restraining hand of equity, whether the wrongful act is done or threatened to be done by either a stranger or the proprietor of the cemetery. Bessemer Land & Improvement Co. v. Jenkins, 111 Ala. 135, 18 So. 565, 56 Am.St.Rep. 26; [and other cases]."

From 10 Am.Jur., Cemeteries, Sect. 22, pp. 503, 504, supra, is the following:

"The sentiment of all civilized peoples regards the resting place of the dead as hallowed ground, and requires that in some respects it be not treated as subject to the laws of ordinary property. It follows that an interest in a burial lot is of a somewhat peculiar nature. As a general rule, one who purchases and has conveyed to him a lot in a public cemetery does not acquire the fee to the soil, but only a right of burial therein, which has been variously designated as an easement or as a license or privilege. * * * Even though the purchaser of a cemetery lot may not acquire the fee simple title to the property, he has a property right in his lot which the law recognizes and protects by appropriate remedies from invasion, whether it is by a mere trespasser or by the corporation itself. * * * One who is permitted to bury his dead in a public cemetery, by the express or implied consent of those in control of it, acquires such a possession in the spot of ground in which the bodies are buried as will entitle him to an action against the owners of the fee or strangers who, without his consent, negligently or wantonly disturb it, and this right of possession will continue as long as the cemetery continues to be used. * *".

The following is from 14 C.J.S., Cemeteries, § 36, pp. 95, 96, supra:

"When one buries his dead in soil to which he has the freehold right or to the possession of which he is entitled, there is no difficulty in his protecting their graves from insult and injury by an action of trespass against a wrongdoer. This right is not limited to the owners of the freehold, and one who has a mere easement or right of burial in a cemetery plot may maintain an action or seek an injunction against those who without his consent negligently or wantonly disturb it."

■ Evidence was offered on behalf of plaintiffs tending to show disturbance by defendant, its agents or employees, of other graves in the same cemetery at or about the same time the trespass here involved was alleged to have been committed, all as part of a plan to "renovate" the cemetery. Defendant insists that it was prejudicial error to overrule its objections to such evidence. With this we cannot agree. The fact that other graves in the same cemetery were disturbed at or about the same time as the alleged trespass to Will's grave was relevant, it seems to us, as bearing on the issue of maliciousness and wantonness. As stated in 20 Am.Jur., Evidence, Sect. 303, p. 281:

" * * * The law in civil cases, as well as in criminal cases, permits proof of acts other than the one charged which are so related in character, time, and place of commission as to tend to support the conclusion that they were part of a plan or system or as to tend to show the existence of such a plan or system. Thus, when one's motive, malice, or ill will or his intention or good or bad faith in doing or omitting to do certain acts becomes an issue, his acts, statements, and conduct on other occasions which have a bearing upon his motive or intention upon the occasion in question are competent evidence. * * * "

One of the grounds of the motion for new trial was that the verdict of the jury

was excessive. The argument in support of this ground is thus stated in defendant's brief:

"It is shown that the jury undertook to return a verdict in words and figures as follows:

"'We the jury find in favor of the plaintiffs and assess their damages at $1,000.00 actual or compensatory damages and $1500.00 punitive damages.'

"Upon being advised by the trial court that the verdict could not be received in the form submitted, the jury retired and within a few minutes returned a verdict in the total sum of $2500.00. It is apparent that the jury awarded $1,000.00 as actual or compensatory damages. * * * The measure of actual damage in actions of trespass to land is the difference between the value before and the value after. * * * The evidence in the case shows that Alfred Dean spent $17.00 for the concrete slab that was erected over the grave of Will Dean. * * * It is clear from the record in this case that $1,000.00 as compensatory damages for the $17.00 slab is excessive, * * *."

■ We do not understand defendant to question the propriety of the trial court's action in refusing to receive the first verdict and instructing the jury to retire again for further consideration. This was in accord with approved procedure. City of Tuscaloosa v. Fair, 232 Ala. 129, 135, 167 So. 276; Foster v. Prince, 224 Ala. 523, 524, 141 So. 248; City of Birmingham v. Hawkins, 196 Ala. 127, 131, 132, 72 So. 25; Higginbotham & Co. v. Clayton & Webb, 80 Ala. 194, 195; Allen v. State, 79 Ala. 34, 39. The argument seems to be that since the first verdict attempted to make an award of actual or compensatory damages in the amount of $1,000 that fact is sufficient to show that the jury, in rendering the final verdict of $2,500, included in such verdict an amount of $1,000 for actual or compensatory damages. For that to be said would be to speculate not only as to what occurred in the jury room but also as to the mental processes of the jurors in arriving at this final verdict. That verdict was responsive to the issues and in conformity with the court's instructions. We would not be warranted in assuming that the jury included in that verdict any element of damages not responsive to the issues and instructions of the court. If the verdict as finally rendered should be considered excessive, that would be something to be determined without regard to the recitals in the first verdict.

■ We have carefully reviewed the evidence. As we see it, a jury question was presented on the issues of wantonness, maliciousness and intent in committing the trespass. We do not find any basis for disturbing the jury's findings in favor of the plaintiffs on these issues, although such issues might well have been resolved in favor of defendant.

■ Nor do we think we would be justified in reducing the amount of the award, as being excessive, particularly in view of the trial court's refusal to do so on motion for new trial. Pertinent here is the following from Alabama Water Service Co. v. Harris, 221 Ala. 516, 519, 129 So. 5, 8:

"This court, fully sensible of the wise rule against the invasion of the province of juries, often sustains verdicts which we think excessive. We would have it known that failure to disturb a given verdict does not mean that we approve it. It means no more than that allowing all presumptions in favor of the judgment of the jury, followed by the ruling of the trial judge, we are not clearly convinced it is so excessive as to demand the interposition of this court."

We here note that some cases make a distinction between "private" and "public"

cemeteries. It is our view that Grace Hill Cemetery, though privately owned, is properly classified as a "public cemetery" and we have dealt with it here as such. As stated in Parker v. Fidelity Union Trust Co., 2 N.J.Super. 362, 63 A.2d 902, 916, 917:

> " 'The law contemplates two classes of cemeteries, public and private. The former class is used by the general community or neighborhood or church, while the latter is used only by a family or a small portion of a community.' 14 C.J.S., Cemeteries, § 1, p. 63. * * * The test is public user. In Davie v. Rochester Cemetery Association, 91 N.H. 494, 23 A.2d 377, 378, the Supreme Court of New Hampshire held that a cemetery, though maintained by a private corporation, may fairly be deemed a public burying ground if 'it "is open, under reasonable regulations, to the use of the public for the burial of the dead." ' "

The following is from City of Wichita v. Schwertner, 130 Kan. 397, 286 P. 266, 268:

> " * * * A cemetery is a place or area of ground set apart for the burial of the dead. The law contemplates two classes of cemeteries, public and private. The former is used by the general community, or neighborhood, or church, while the latter is used only by a family, or a small portion of the community. 11 C.J. 50. In Cemetery Ass'n v. Meninger, 14 Kan. 312, 317, it was said: 'A cemetery is as public a place as a court-house, or a market. * * * We may keep away from the court-house, and avoid the market, but the place of the dead none may shun.' "

It follows, from what we have said, that the judgment appealed from is due to be affirmed. It is so ordered.

Affirmed.

LIVINGSTON, C. J., and LAWSON and SIMPSON, JJ., concur.