The Honorable Gary D. Hunter State Senator 145 Spring Lake Drive Mountain Home, AR 72653-3821
Dear Senator Hunter:
This is in response to your request for an opinion on the following questions:
 1. Can the owner of land containing a large community cemetery legally permit his cattle and farm equipment access to the cemetery, causing damage to grave sites and headstones?
 2. Can the private landowner be forced to fence his cattle out of the cemetery and to keep farm equipment out of the cemetery?
 3. Do family members of the deceased need permission to enter the cemetery for purposes of maintenance and repair.
RESPONSE
In response to your first question, regardless of ownership, an Arkansas statute makes it illegal purposely to cause damage to a cemetery. However, under the facts you present, because it was not the landowner's express purpose to damage the cemetery, I do not believe this statute would apply. It is further illegal purposely or recklessly to damage the property of another. In my opinion, even though the landowner owns the fee interest in the property, the surviving relatives have a property interest in the cemetery, and, depending on the facts, the landowner might be found recklessly to have damaged that interest. I will not opine on the availability of possible common-law causes of action, such as negligence or nuisance. In response to your second question, no specific statute authorizes an owner to fence his cattle or keep farm machinery out of a cemetery, although a chancery court might conceivably enjoin the landowner to do so. In response to your third question, in my opinion the private landowner may not deny the surviving relatives access to the cemetery for purposes of maintenance and repair.
A.C.A. § 5-71-215(a)(3) defines as a criminal offense "purposely" defacing, marring, desecrating or otherwise damaging a cemetery. The offense is classified either as a misdemeanor or a felony, depending on the amount of damage incurred. A person acts "purposely" "when it is his conscious object to engage in conduct of that nature or to cause such a result." A.C.A. § 5-2-202(1). I assume in the present case it was the "conscious object" of the landowner to encroach on the cemetery but not to cause any damage. In my opinion, this statute is directed at purposeful vandals, not a landowner causing damage incidental to farming on his property.
A.C.A. § 5-38-203(a)(1) defines as criminal mischief in the first degree "purposely and without legal justification" destroying or causing damage to another's property. A.C.A. § 5-38-204(a)(1) defines as criminal mischief in the second degree "recklessly" engaging in the same conduct. A person acts "recklessly" "when he consciously disregards a substantial and unjustifiable risk that the circumstances exist or the result will occur. The risk must be of a nature and degree that disregard thereof constitutes a gross deviation from the standard of care that a reasonable person would observe in the actor's situation." A.C.A. § 5-2-202(3). Although the decedents' families apparently do not have a fee simple interest in the cemetery, it is my opinion that they do have a cognizable property interest. "Because of its inherent nature, a burial ground is not subject to laws of ordinary property. . . ." 14 C.J.S. Cemeteries 1 (footnote omitted). Ordinarily, the purchaser of a cemetery lot is regarded as only acquiring a privilege, easement, or license to make interments in the purchased lot so long as the lot remains a cemetery.McClellan v. Highland Sales and Inv. Co., 484 S.W.2d 239 (Mo. 1972);State v. Forest Lawn Lot Owners Ass'n, 152 Tex. 41, 254 S.W.2d 87(1953). Possession of a burial lot, unless voluntarily relinquished, continues as long as graves are marked and distinguishable and the cemetery continues to be used. Smith and Gaston Funeral Directors v.Dean, 262 Ala. 600, 80 So.2d 227 (1955); Hughes v. Harden, 194 Al. 307,151 P.2d 425 (1944). And even though the owner has no fee simple title, he has the exclusive right to make interments in the lot. Bouton v.Roberts, 265 Ky. 569, 97 S.W.2d 413 (1936). Case law has further provided that the title to a burial lot passes to the owner's heirs of lineal descent upon the owner's death. See People ex rel. Paxton v. BloomingtonCemetery Ass'n, 353 Ill. 534, 187 N.E. 455 (1933). In my opinion, in light of this property interest, A.C.A. § 5-2-202, which criminalizes recklessly damaging the property of another, might apply.
In my opinion, the fact that the survivors have some sort of property interest in the cemetery may trigger application of A.C.A. § 5-62-122, which prohibits anyone from knowingly permitting his livestock to run "at large." Although the landowner may well argue that his cattle cannot be considered "at large" if confined to his own property, a court may consider them to be "at large" if they encroach on property in which the survivors have a lesser, but particularly sacrosanct, property interest.
In addition, A.C.A. §§ 5-39-401 and -402 make it a felony "for any person to destroy or carry away any cemetery marker or grave marker." On its face, this statute could apply only if markers were completely destroyed, and only then if it were done by a person. I doubt this statute would apply to a farmer who negligently allowed cattle to encroach on the cemetery.
There is no statutory authority to compel the landowner to fence in the cemetery to avoid the problems you have recounted. Whether the family members have any right to damages or injunctive relief at common law directing construction of such a fence is a matter they should discuss with private counsel.
With respect to the issue of access to the cemetery by family members, A.C.A. § 5-39-212 provides as follows:
 (a) It shall be unlawful for any person, firm, corporation, partnership, or association to:
 (1) Construct any fence on any property in such manner as to enclose any cemetery unless suitable access by automobile to the cemetery is provided by gate or otherwise. The word "cemetery," as used in this subsection, is not intended to apply to any private family burial plot which contains fewer than six (6) commercial grave markers and has not been used for burial purposes for at least twenty-five (25) years and which has not had an access road to the burial plot for at least thirty (30) years. Nothing in this section prohibits the placement of a fence around any cemetery for the purpose of defining boundaries or protection of grave sites. . . .
Although this statute specifically proscribes only enclosing a cemetery so as to deny access, the underlying legislative intent is clearly to afford access to any cemetery that meets the statutory definition. In my opinion, given your description of the property as "a quite large community cemetery," this statute ensures family members access for the purposes of restoration and maintenance. Under subsection (b) of the statute, any effort by the landowner to keep family members out would be classified as a misdemeanor. In addition, family members may have a right of access by express or prescriptive easement — a possibility they should discuss with private counsel.
Assistant Attorney General Jack Druff prepared the foregoing opinion, which I hereby approve.
Sincerely,
MARK PRYOR Attorney General
MP:JHD/cyh