**Timothy KIRBY, Appellant,**

v.

**COMMONWEALTH of Kentucky, Appellee.**

**No. 2003–CA–000406–MR.**

Court of Appeals of Kentucky.

April 2, 2004.

*Inc.*, Ky., 50 S.W.3d 195 (2001), and our

Timothy Kirby, West Liberty, pro se.

Albert B. Chandler III, Attorney General, Tami Allen Stetler, Assistant Attorney General, Frankfort, KY, for appellee.

Before GUIDUGLI, MINTON, and VANMETER, Judges.

*OPINION*

MINTON, Judge.

Timothy Kirby appeals the denial by the circuit court of his motion under Kentucky

review is limited to the same record.

Revised Statutes (KRS) 439.3402 to be considered a victim of domestic violence and, therefore, exempt from the severe limitations on parole eligibility contained within KRS 439.3401. The circuit court did not hold an evidentiary hearing on Kirby's motion, and it did not explain its reasoning for denying it except to say that he "is not excepted as a victim of domestic violence." While it is true that Kirby does not present the typical fact pattern brought to mind by the term "domestic violence," the statutes in question are written broadly enough to encompass the events Kirby alleges occurred.

Kirby was charged with murder in connection with the shooting death of his first cousin, Brian Johnson. Through an agreement with the Commonwealth, Kirby pled guilty to the lesser crime of manslaughter in the first degree in exchange for a recommended sentence of fourteen and one-half years. The agreement explained that the Commonwealth agreed to the lesser charge because "[i]t is conceivable that a jury could determine that the reported attack on [Kirby's] mother created an extreme emotional disturbance with justification which supports Manslaughter First Degree." The "reported attack" referred to is described by Kirby as an incident in which Johnson allegedly attacked and choked Kirby's mother. Kirby describes the shooting of Johnson as being done to prevent Johnson from killing his mother; however, his plea to manslaughter forecloses the possibility that it could provide a complete defense. The plea agreement by implication characterizes the attack as one that did not create an imminent risk of death or severe bodily injury but, rather, was an event that precipitated an extreme emotional disturbance which led to the shooting.

Because Kirby pled guilty to a class B felony which involved the death of the victim, he is within the definition of violent offender contained in KRS 439.3401(1). As such, Kirby will not be eligible for parole until he has served at least 85 percent of his sentence as required by KRS 439.3401(3). However, KRS 439.3401(5) provides that the enhanced penalties for violent offenders "shall not apply to a person who has been determined by a court to have been a victim of domestic violence or abuse pursuant to KRS 533.060 with regard to the offenses involving the death of the victim . . . ."

We note that Kirby's motion under KRS 439.3402 is something of a procedural irregularity in that KRS 439.3402(1) provides that it applies to violent offenders convicted prior to July 14, 1992. Because Kirby's plea and sentencing occurred in 1999 and 2000, respectively, his status as a violent offender or victim of domestic violence should be governed by KRS 439.3401(5), which in conjunction with KRS 533.060, requires a hearing and findings to be made concurrently with final judgment and sentencing. However, no issue regarding this irregularity was raised in the circuit court or on appeal to this Court; rather, the dispute as framed below and on appeal centers around whether the alleged violence directed toward Kirby's mother could have had a mitigating effect on Kirby's parole eligibility. Because neither the Commonwealth nor the circuit court expressed any objection to the procedural posture of Kirby's motion, we will consider any irregularity harmless and proceed to a determination on the merits.[1]

■ Critical in this case is a determination of whether "domestic violence," as contemplated by the above statutes, includes the conduct pertaining to Kirby's

---

1. *See* Ky. R.Crim. P. (RCr) 9.24.

crime. We look to the definitions in KRS 403.720, which provides in relevant part:

(1) "Domestic violence and abuse" means physical injury, serious physical injury, sexual abuse, assault, or the infliction of fear of imminent physical injury, serious physical injury, sexual abuse, or assault between family members or members of an unmarried couple;

(2) "Family member" means a spouse, including a former spouse, a parent, a child, a stepchild, or any other person related by consanguinity or affinity within the second degree[.]

The above language includes a single incident of assault within the definition of "domestic violence" if it occurs between listed family members. We must now decide whether Johnson and Kirby's mother satisfy the statutory definition of family members; *i.e.*, whether they are related by consanguinity or affinity within the second degree. Our research revealed the following explanation for the methods of determining degrees of kinship, albeit in the context of descent and distribution.

Two formulas exist for determining the degree of kinship: the civil-law method, and the common law (or cannon-law) method.

The civil-law method of computing degrees of kinship has been adopted in some jurisdictions by statute or by court decision. Under this method, the degree of kinship is calculated by counting upward from the intestate to the nearest common ancestor, then downward to the claimant, with each generation representing one degree.

Computing by the rule of the civil law, parents and children of a deceased are related to him or her in the first degree, and the second degree comprises the grandparents, grandchildren, brothers, and sisters of the deceased. Uncles, aunts, nephews, nieces, and great-grandparents of the deceased are related to him or her in the third degree, and the fourth degree includes first cousins and great-uncles and great-aunts. The children of a cousin (first cousins once removed) are related in the fifth degree. The relationship of second cousins (related to each other by descent from the same great-grandparent) is in the sixth degree.

. . . .

A few jurisdictions employ the common-law (or canon-law) method of computing degrees of kinship. Under this method, the degree of kinship is determined by counting the number of generations from the nearest common ancestor down to the intestate or to the claimant, taking the longer of the two lines if they are unequal.

The fact that kinship can be traced through two lines of descent, such as on the both the [sic] paternal and maternal sides, does not affect the degree of the relationship.[2]

Nowhere in KRS 403.720, or anywhere else in the statutes or case law,[3] does there appear a declaration that Kentucky follows the common law or the civil law in determining degrees of kinship. Indeed, cases such as *Fraser v. Tenney*[4] acknowledge

**2.** 23 Am Jur 2d Descent and Distribution § 73 (citations omitted).

**3.** There is an Opinion of the Attorney General, OAG 84–311, which speculates that Kentucky would probably follow the common law. However, this opinion is purely speculative and of no precedential value.

**4.** Ky.App., 987 S.W.2d 796, 797 (1998). *See also Brunton v. Roberts*, 265 Ky. 569, 97 S.W.2d 413 (1936); *Hook v. Joyce*, 94 Ky. 450, 22 S.W. 651 (1893).

the difference in degree resulting from use of the different kinship systems; however, nowhere is there an expression of which is the preferred determination. Furthermore, Kentucky's statutes on descent and distribution[5] do not speak in terms of traditional degrees of kinship. Rather, our statutes establish a detailed order listed by specific relationship (*e.g.*, "children," "father," "mother," etc.) to the decedent without reference to any resulting degree of kinship.

Under the civil law system for computing kinship, Johnson would have been related to Kirby's mother in the third degree. Under this calculation, Kirby could not be considered a victim of domestic violence because the alleged assault on his mother did not occur between family members as defined by KRS 403.720(2). Using the common law method, Johnson is related to Kirby and Kirby's mother in the second degree. Under this system, Kirby could be considered a victim of domestic violence because the alleged assault was between family members.

Despite our best efforts at determining the intent of the General Assembly, KRS 403.720(2) is wholly ambiguous in its method of determining kinship within the second degree. Our research was unable to find any authority in all of the Kentucky Revised Statutes regarding which method to use.

■ In interpreting an ambiguous penal statute, doubt is to be resolved in favor of the accused.[6] Here, application of the common law method for computing kinship would bring Kirby's case within the availability of the exception for victims of domestic violence while application of the civil law method would make the exception unavailable. Accordingly, we hold that the common law method for computing kinship is to be applied in interpreting KRS 403.720(2), which thereby brings within its coverage a larger class of defendants including Kirby.

We now turn our attention to the Commonwealth's argument that Kirby cannot be considered a victim of domestic violence because the alleged attack was directed at his mother, not at him. KRS 439.3401(5) incorporates by reference KRS 533.060. Contained within KRS 533.060(1) is language applying the so-called "domestic violence exception" to a scenario wherein "the person against whom the weapon was used had previously or was then engaged in an act or acts of domestic violence and abuse as defined in KRS 403.720 against either the person convicted or a family member as defined in KRS 403.720 of the person convicted." Therefore, KRS 439.3401(5) excepts from restricted parole eligibility those defendants who commit any of the acts listed in 439.3401(1) against an individual who has committed an act of domestic violence against a family member of the defendant.

■ The Commonwealth has argued that it would produce a bizarre result to allow a defendant such as Kirby to avail himself of the lessened sanctions imposed upon violent offenders who are the victims of domestic violence. However, there is

5. *See* Ky.Rev.Stat. (KRS) 391.010 *et seq*. We note that KRS 403.720 dates to 1984, nearly thirty years since the latest significant revision of the descent and distribution statutes. We are at a loss to explain the General Assembly's decision to incorporate the historic concept of degrees of kinship, which has not appeared elsewhere in the law of the Commonwealth for nearly fifty years, into a domestic violence statutory definition so long after the concept had been abandoned in other contexts.

6. *Commonwealth v. Colonial Stores, Inc.*, Ky., 350 S.W.2d 465, 467 (1961). This concept is known as the rule of lenity.

nothing bizarre about it. The General Assembly chose to include in its definition of victims of domestic violence those whose family members are assaulted, a category into which Kirby fits if his allegations are true. We see no reason to interfere with the legislature's policy choice. When analyzing a statute, we must interpret statutory language with regard to its common and approved usage. In so doing, we must refer to the language of the statute rather than speculating as to what may have been intended but was not expressed.[7] In other words, a court "may not interpret a statute at variance with its stated language."[8]

On a different note, the Commonwealth has repeatedly described Kirby's allegations regarding the attack on his mother as "refuted by the physical evidence."

However, at this stage in the proceedings there has been no evidence introduced which, of course, precludes any factual determination. For this reason, the circuit court must hold an evidentiary hearing to determine the truth of Kirby's allegations.[9]

The circuit court's order denying Kirby's motion for relief is vacated and the case remanded for an evidentiary hearing consistent with this opinion.

ALL CONCUR.

**7.** *Commonwealth v. Allen*, Ky., 980 S.W.2d 278, 280 (1998).

**8.** *Id.* (citation omitted). *See also Gurnee v. Lexington–Fayette Urban County Government*, Ky.App., 6 S.W.3d 852, 856 (1999).

**9.** *See Gober v. Commonwealth*, Ky.App., 79 S.W.3d 887 (2002).