Richard FUSTON, Appellant,

v.

COMMONWEALTH of Kentucky, Appellee.

No. 2006–CA–000299–MR.

Court of Appeals of Kentucky.

March 2, 2007.

---

4. http://www.mapquest.com. Under Ky. Rules of Evidence (KRE) 201, judicial notice "may be taken at any stage of the proceeding."

5. *Id.*

Richard Fuston, LaGrange, pro se.

Gregory D. Stumbo, Attorney General of Kentucky, Courtney J. Hightower, Assistant Attorney General, Frankfort, KY, for appellee.

Before ABRAMSON and VANMETER, Judges; EMBERTON,[1] Senior Judge.

1. Senior Judge Thomas D. Emberton sitting as Special Judge by assignment of the Chief Justice pursuant to Section 110(5)(b) of the Kentucky Constitution and Kentucky Revised Statutes (KRS) 21.580.

## OPINION

VANMETER, Judge.

Richard Fuston appeals *pro se* from the Whitley Circuit Court's order denying his motion for relief pursuant to RCr[2] 11.42 without an evidentiary hearing. Fuston alleges several instances of ineffective assistance of counsel on appeal. For the following reasons, we affirm in part, and vacate and remand in part.

In January 2002, Fuston was convicted by a jury of first-degree manslaughter. On direct appeal, a panel of this court set out the facts as follows:[3]

> In 2001, Richard Fuston and a number of other members of his family lived in the Mount Morgan Apartment complex in Williamsburg, Kentucky. Richard's sister, Tammy Fuston, and the victim, Kevin Brown, had an ongoing, but often troubled relationship. Brown occasionally stayed at Tammy's apartment, but he did not live there. On July 14, 2001, Brown assaulted Tammy Fuston. By the time the Williamsburg Police arrived at her apartment, Brown had left the scene. The police officers advised Tammy to get an Emergency Protective Order (EPO) and a warrant against Brown, which she did. She then went to the hospital in Corbin to be treated for her injuries.
>
> While Tammy was at the hospital, Richard and his brother Scottie drove to Jellico, Tennessee to buy some beer. While there, they saw Brown's truck parked in the lot of a bar. Richard went to the Jellico Police Department to advise them that there was a warrant for

2. Kentucky Rules of Criminal Procedure.

3. *Fuston v. Commonwealth,* No. 2002–CA–000975–MR, 2003 WL 22319397, at *1 (Ky. App. Oct. 10, 2003).

Brown's arrest. They then drove back to Williamsburg. The Jellico Police Department contacted the Williamsburg Police, who confirmed the existence of the arrest warrant for Brown.

... Richard [proceeded to Tammy's] apartment to repair a phone which had been damaged during the altercation with Brown. Richard took his gun with him to Tammy's apartment. [He was] accompanied by [his] sister-in-law, Rachel Fuston, and Rachel's friend, Cherish Harris.

At approximately 1:30 a.m. on July 15, Rachel heard a thump at the door. Cherish went to look through the peephole, but the view was blocked. The door opened, and Brown walked in. Richard ... Rachel, and Cherish each repeatedly told Brown to leave, but Brown kept advancing into the apartment. Richard picked up the gun, cocked it, pointed it at the floor, and again told Brown to leave.

According to Richard, Brown threatened to kill him. However, the other witnesses do not recall Brown having said this. The witnesses do agree that Brown continued advancing on Richard. When Brown was within a few feet of Richard, he reached for Richard's gun with his left hand, and began reaching into his back pocket with his right hand. Richard then began firing the gun, shooting Brown a total of seven times. Brown staggered out of the apartment and collapsed on the balcony outside. He died shortly thereafter. No weapon was found on Brown's body, but a cell phone was found in his back pocket. Tests later established that Brown's blood-alcohol content was 0.144.

The jury, which was instructed on murder, first and second degree manslaughter, reckless homicide, and self-protection, found Fuston guilty of first-degree man-

slaughter and recommended a sentence of seventeen years. The trial court imposed the recommended sentence, and this court affirmed on direct appeal.

Thereafter, Fuston moved the trial court *pro se* for relief pursuant to RCr 11.42, claiming several instances of ineffective assistance of counsel. The trial court denied Fuston's motion without an evidentiary hearing, and this appeal followed.

■ We note at the outset that to prove ineffective assistance of counsel, Fuston must prove "that his counsel's performance was deficient and that he was prejudiced by that deficiency." *Harper v. Commonwealth,* 978 S.W.2d 311, 315 (Ky.1998) (citing *Strickland v. Washington,* 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984)). Further, since the trial court denied Fuston's RCr 11.42 motion without an evidentiary hearing, our review is limited to whether his motion "on its face states grounds that are not conclusively refuted by the record and which, if true, would invalidate the conviction." *Baze v. Commonwealth,* 23 S.W.3d 619, 622 (Ky. 2000).

## I. Jury Instruction—Imperfect Self–Protection

■ Fuston's first argument is that his trial counsel rendered ineffective assistance by failing to request a jury instruction on "imperfect self-protection," i.e., the wanton or reckless use of self-protection, as codified in KRS 503.120(1). We disagree.

Instruction 5 in this matter instructed the jury regarding self-protection. The first paragraph was modeled after Cooper's instruction on the general self-protection law found in KRS 503.050. 1 Cooper, *Kentucky Instructions to Juries (Criminal),* § 11.07 (Rev. 4th ed.1999). The remainder of the instruction was mod-

eled after Cooper's instruction on a wanton or reckless belief in the need for self-protection, as found at KRS 503.120(1). *Id.* at 11.08B. Since the court in fact instructed the jury as to "imperfect self-protection," Fuston's counsel obviously did not provide ineffective assistance by failing to request the same instruction.

## II. Jury Instruction—Protection Against Burglary

■ Next, Fuston argues that his trial counsel rendered ineffective assistance by failing to request a jury instruction on the use of deadly force in protection against burglary, as codified at KRS 503.080(2)(b).[4] We disagree.

■ Fuston's counsel presented evidence of self-protection, which justifies a defendant's use of deadly force when he believed deadly force was necessary to protect himself against, *inter alia*, death or serious physical injury. *See* KRS 503.050(2).[5] This court previously described on direct appeal Fuston's evidence of self-protection as being "quite strong." Fuston nevertheless argues that his attorney provided ineffective assistance by failing to also present evidence of the use of deadly force in protection against burglary. However, raising that issue would have required the jury to determine whether Fuston believed that Brown was about to commit burglary, which one commits when he knowingly enters or remains unlawfully in a building with the intent to commit a misdemeanor or a felony. KRS 511.040; KRS 500.080(2). *See also* Robert G. Lawson & William H. Fortune, *Kentucky Criminal Law* § 4–4(b), 4–4(c)(3) (1998). Other issues that would have necessarily arisen include whether Fuston

possessed the property against which Brown's unlawful conduct was directed and whether Fuston had an immediate need to employ force to prevent the unlawful conduct. *See* Lawson & Fortune § 4–4(b). As the Commonwealth points out, "[c]ounsel is not required to present every non-frivolous defense .... more is not always better. Stacking defenses can hurt a case. Good advocacy requires 'winnowing out' some arguments, witnesses, evidence, and so on, to stress others." *Chandler v. United States,* 218 F.3d 1305, 1319 (11th Cir. 2000). Given the apparent strength of the evidence supporting Fuston's claim of self-protection, as well as the numerous issues associated with a claim of protection against burglary arising from these facts, Fuston has not overcome the strong presumption that his counsel's presentation of evidence of self-protection but not protection against burglary "falls within the wide range of reasonable professional assistance" or that "the challenged action 'might be considered sound trial strategy.'" *See Strickland v. Washington,* 466 U.S. 668, 689, 104 S.Ct. 2052, 2065, 80 L.Ed.2d 674 (1984) (quoting *Michel v. Louisiana,* 350 U.S. 91, 101, 76 S.Ct. 158, 164, 100 L.Ed. 83 (1955)). As such, the trial court did not err by failing to hold an evidentiary hearing to resolve this issue.

## III. Sentencing Phase

■ Fuston also argues that his trial counsel provided ineffective assistance by failing to investigate and introduce during the sentencing phase of his trial evidence regarding: "Fuston's obligation to pay child support, no prior criminal record, his charge evolved from a domestic violence

---

**4.** We note that we analyze this issue under the version of KRS 503.080 as it existed prior to the 2006 amendment effective July 12, 2006.

**5.** *See also supra* Part I. with regard to the wanton or reckless use of self-protection, or imperfect self-protection, as codified in KRS 503.120(1).

incident of a family member[.]" We disagree.

With regard to his obligation to pay child support, Fuston testified during the trial that he had three children. Thus, the jury was aware that he had obligations to those children, whether in the form of child support or otherwise. Additionally, the fact that Fuston had no prior criminal record was one of the two pieces of evidence the parties agreed to provide the jury during the penalty phase of the trial. Finally, the jury was aware of the domestic violence issues implicated by the facts of the case, as those facts were brought out in the guilt phase of the trial. In sum, Fuston's arguments lack merit because the jury already was aware of the issues that Fuston complains his trial counsel should have discussed during the sentencing phase of his trial.

### IV. Domestic Violence Exception to KRS 533.060

■ KRS 533.060 provides that a person who is convicted of using a firearm in the commission of a Class A, B, or C felony shall not be eligible for probation, shock probation, or conditional discharge unless the person against whom the weapon was used had previously or was then engaged in domestic violence against the defendant or the defendant's family member. Fuston argues that his trial counsel provided ineffective assistance by failing to move for probation or conditional discharge pursuant to the domestic violence exception contained in KRS 533.060. We disagree.

After the jury rendered its verdict, the court postponed the entry of judgment pending a presentence investigation and a hearing "for the purpose of determining whether the Defendant should receive a sentence of imprisonment, a sentence of probation, or a sentence of conditional dis-

charge, and for the consideration of an alternative sentencing plan[.]" Further, the sentencing hearing was memorialized in the final judgment, which noted that the trial court had given due consideration "to the written report of the Division of Probation and Parole, to the nature and circumstances of the crime, and to the history, character and condition of the Defendant[.]" The court concluded that imprisonment was necessary, marking the following reasons on the judgment form:

1) the victim suffered death or serious physical injury;

2) there is a substantial risk that Defendant will commit another crime during any period of probation, probation with an alternative sentencing plan or conditional discharge;

3) the Defendant is in need of correctional treatment that can be provided most effectively by committing the Defendant to a correctional institution; [and]

4) probation, probation with an alternative sentencing plan or conditional discharge would unduly depreciate the seriousness of the crime for which the Defendant is convicted[.]

The court did not mark a fifth option which related to ineligibility for probation and parole. Given the court's clear consideration but rejection of the option of probation and conditional discharge, Fuston was not afforded ineffective assistance even if his trial counsel failed to specifically request the court to consider whether the exception was applicable.

### V. Domestic Violence Exception to KRS 439.3401

■ Finally, Fuston argues that his trial counsel provided ineffective assistance by failing to move the court to exempt him from serving 85% of his sentence pursuant to the domestic violence exception con-

tained in KRS 439.3401(5). As this claim is not refuted by the record, we remand for an evidentiary hearing on this issue. We also note that in doing so, we make no judgments as to the merits of Fuston's claim or to the factual findings the trial court must make on remand. We simply hold that his allegations cannot be resolved based upon the record.

KRS 439.3401(3) mandates that a violent offender, as defined by the statute, "shall not be released on probation or parole until he has served at least eighty-five percent (85%) of the sentence imposed." KRS 439.3401(5) exempts from this requirement, however, any person who has "been determined by a court to have been a victim of domestic violence or abuse pursuant to KRS 533.060 with regard to the offenses involving the death of the victim[.]" Further, KRS 533.060(1) permits the exemption of a defendant who

> establishes that the person against whom the weapon was used had previously or was then engaged in an act or acts of domestic violence and abuse as defined in KRS 403.720 against either the person convicted or a family member as defined in KRS 403.720 of the person convicted.

Finally, KRS 403.720 contains the following definitions:

> (1) "Domestic violence and abuse" means physical injury, serious physical injury, sexual abuse, assault, or the infliction of fear of imminent physical injury, serious physical injury, sexual abuse, or assault between family members or members of an unmarried couple;
>
> (2) "Family member" means a spouse, including a former spouse, a parent, a child, a stepchild, or any other person related by consanguinity or affinity within the second degree; and
>
> (3) "Member of an unmarried couple" means each member of an unmarried couple which allegedly has a child in common, any children of that couple, or a member of an unmarried couple who are living together or have formerly lived together.

Here, it appears to be undisputed that Fuston, as the "person convicted," is the brother, and therefore a family member as defined in KRS 403.720(2), of a person against whom the victim allegedly perpetrated violence and abuse. However, other material facts are not clear from the evidence. For instance, it is unclear and the court did not find whether the victim and Fuston's sister were "member[s] of an unmarried couple" as defined in KRS 403.720(3), or whether the alleged violence between the victim and Fuston's sister satisfied the definition of "domestic violence and abuse" under KRS 403.720(1). Nor is it clear whether the requisite connection existed between any history of domestic violence and the actions Fuston took against Brown. *See Commonwealth v. Vincent,* 70 S.W.3d 422, 425 (Ky.2002); *Holland v. Commonwealth,* 192 S.W.3d 433 (Ky.App.2005). Thus, material issues of fact exist as to whether Fuston qualified for the KRS 439.3401 exemption. In the absence of such findings, it cannot be determined from the record whether Fuston's counsel provided ineffective assistance by failing to move the court to exempt Fuston from the statutory prohibition against a violent offender's release on probation or parole prior to serving 85% of a sentence. Hence, this matter must be remanded for an evidentiary hearing as to this particular issue. Finally, we note that although the Commonwealth correctly points out that Fuston relies on a case which was not decided until after his sentence was imposed, *see Kirby v. Commonwealth,* 132 S.W.3d 233 (Ky.App.2004), that fact is immaterial since Fuston's argument and our

decision turn on the relevant statutes rather than on the holding in *Kirby*.

## VI. Conclusion

The Whitley Circuit Court's order is affirmed in all respects except as to its finding that the record conclusively refutes Fuston's argument that his trial counsel provided ineffective assistance by failing to move the court to apply the domestic violence exception to the rule that normally would require him to serve 85% of his sentence. *See* KRS 439.3401(5). This matter is vacated and remanded to the circuit court for an evidentiary hearing regarding that issue. Further, because Fuston is entitled to an evidentiary hearing, the circuit court must also determine whether Fuston is entitled to appointed counsel in accordance with RCr 11.42(5).

ALL CONCUR.