RENDERED: APRIL 15, 2022; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2020-CA-0836-MR

WILLARD CALHOUN APPELLANT

v. APPEAL FROM GREEN CIRCUIT COURT
HONORABLE DAN KELLY, JUDGE
ACTION NO. 16-CR-00017

COMMONWEALTH OF KENTUCKY APPELLEE

OPINION
VACATING AND REMANDING

** ** ** ** **

BEFORE: CLAYTON, CHIEF JUDGE; CETRULO AND GOODWINE, JUDGES.

CLAYTON, CHIEF JUDGE: Willard Calhoun appeals from a Green Circuit Court order denying his motion for relief pursuant to Kentucky Rules of Criminal Procedure (RCr) 11.42. Calhoun, who was convicted of first-degree manslaughter, argues that his trial counsel was ineffective for failing to request a jury instruction on the privilege of protection against burglary. Because Calhoun's claim cannot be

resolved by reference to the record, we vacate and remand for an evidentiary hearing.

Calhoun and the victim, Gerald Scott, had been friends since childhood. Calhoun's girlfriend, Christina Pica, and Gerald's wife, Shaun, were also friends. One day Calhoun told Christina that Gerald had propositioned him for sex when they were children. Christina reported his comments to Shaun. Shaun told Gerald, who became enraged. Shaun testified that she and Gerald drove to Calhoun's home to confront him and that Gerald was going over there to "whoop his [Calhoun's] ass." Shaun testified that she and Gerald had been consuming alcohol that evening, and methamphetamine and other drugs were subsequently discovered in Gerald's system.

When they arrived at Calhoun's residence, Gerald told Shaun to lie to Christina, and tell her it was just she and her brother. Christina testified that she would not have opened the door if she had known Gerald was there. When Christina opened the door and spotted Gerald standing off to the side of the porch, she tried to close the door but he pushed past her into the house and ran towards the living room.

Calhoun was lying on the couch watching TV. Gerald confronted him and announced he was there to fight Calhoun. They began arguing about Calhoun's statement that Gerald had propositioned Calhoun for sex when they

were young boys. Christina and Shaun attempted to defuse the situation, telling the men they had been friends for too long to argue like this. Shaun told Gerald she had lied and Calhoun never said he had propositioned him. Christina testified that she saw Calhoun had a knife in his hand at this point. The men appeared to calm down and Gerald began to sit down on the couch. Calhoun looked at him and, in reference to Gerald propositioning him for sex, stated, "Yeah, I said it."

Gerald jumped over the coffee table and hit Calhoun in the face. Calhoun pulled out the knife he had been concealing in his hand and stabbed Gerald several times in the left side. Christina ran from the room seeking help from Trevor Tucker and Laura Waymon, two friends who were sleeping in the other room. She saw Gerald flee from the living room into the kitchen with Calhoun following him. Gerald picked up a pot of boiling water from the stove and threw it towards Calhoun. The water flowed over Calhoun and burned his shoulder. Gerald continued swinging the empty pot at Calhoun's head. He grabbed Calhoun in a headlock and the two fell to the ground with Gerald choking Calhoun. Calhoun, who was still holding the knife, stabbed Gerald in the neck four times.

Shaun testified that she was in the bathroom while the two men were fighting and that when she returned, Gerald was dead on the kitchen floor. Trevor Tucker and Laura Waymon heard Calhoun scream "get out of my [f***ing] house"

several times. Tucker testified that Calhoun stabbed Gerald after Gerald threw a pot at him and placed him in a tight headlock.

Calhoun was indicted on one count of murder and one count of being a first-degree persistent felony offender (PFO I). At trial, Calhoun did not deny he stabbed Gerald but argued that he acted in self-defense. Calhoun's attorney did not request an instruction on the privilege of protection against burglary. Calhoun was convicted of one count of first-degree manslaughter and one count of PFO I. He was sentenced to ten years, enhanced to twenty-five years by the PFO I charge. His conviction was affirmed on direct appeal to the Kentucky Supreme Court. *See Calhoun v. Commonwealth*, No. 2018-SC-000017-MR, 2019 WL 1747075 (Ky. Apr. 18, 2019). He thereafter filed a motion pursuant to RCr 11.42, alleging ineffective assistance of counsel. The trial court denied the motion without a hearing and this appeal followed.

A movant claiming ineffective assistance of counsel must meet two requirements. "First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064, 80 L. Ed. 2d 674 (1984). "Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that

-4-

counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id.*

An evidentiary hearing on the motion is required only "if there is a material issue of fact that cannot be conclusively resolved, *i.e.*, conclusively proved or disproved, by an examination of the record." *Fraser v. Commonwealth*, 59 S.W.3d 448, 452 (Ky. 2001) (citations omitted); RCr 11.42(5). On appeal, "[o]ur review is confined to whether the motion on its face states grounds that are not conclusively refuted by the record and which, if true, would invalidate the conviction." *Lewis v. Commonwealth*, 411 S.W.2d 321, 322 (Ky. 1967).

Calhoun argues that his attorney should have requested a jury instruction on the privilege of protection from burglary, which he could have invoked without having to prove he believed the use of deadly force was necessary to protect himself from death or serious physical injury.

"Generally, a trial court is obligated to instruct the jury upon every theory reasonably supported by the evidence. Each party to an action is entitled to an instruction upon his theory of the case if there is evidence to sustain it." *Jackson v. Commonwealth*, 481 S.W.3d 794, 797 (Ky. 2016) (internal quotation marks and citation omitted).

The jury was given the following instruction on self-protection:

<u>SELF-PROTECTION</u>

> If at the time an individual, including the Defendant, uses physical force upon another person he believes that person was then and there about to use physical force upon him, he is privileged to use such physical force against that person as he believes to be necessary in order to protect himself against it, including the right to use deadly physical force but only if he believed deadly physical force to be necessary to protect himself from death or serious physical injury.

> If you believe from the evidence that Gerald Scott had unlawfully and forcibly entered Willard Calhoun's dwelling, and that Willard Calhoun knew that Gerald Scott had unlawfully and forcibly entered Willard Calhoun's dwelling, then you shall presume that Willard Calhoun had a reasonable fear of imminent peril of death or great bodily harm under this instruction.

The self-protection instruction was accompanied by a provocation qualification, which significantly limits the availability of the self-protection claim. "The provocation-qualification instruction should be reserved for situations where the Commonwealth can show the defendant intended to kill the victim all along and essentially baited the victim to use force first so he could claim self-protection." *Barker v. Commonwealth*, 477 S.W.3d 583, 588 (Ky. 2015). The provocation qualification instruction stated:

<u>PROVOCATION QUALIFICATION</u>

> Provided, however, that if you believe from the evidence, beyond a reasonable doubt, that the Defendant provoked Gerald Scott, to use or attempt to use physical force upon him, and that he did so with the intention of causing

death or serious physical injury to Gerald Scott, then the defense of self-protection is not available to him.

The jury was also given the following instruction on no duty to retreat:

## NO DUTY TO RETREAT

A person who is not engaged in an unlawful activity and who is attacked in [a] place where he has a right to be, has no duty to retreat and had a right to stand his ground and meet force with force, including deadly force if he reasonably believes it is necessary to do so to prevent death or great bodily harm to himself or another or to prevent the commission of a felony involving the use of force.

Kentucky Revised Statutes (KRS) 503.080(1) states that "[t]he use of physical force by a defendant upon another person is justifiable when the defendant believes that such force is immediately necessary to prevent . . . [t]he commission of criminal trespass, robbery, burglary, or other felony involving the use of force, or under those circumstances permitted pursuant to KRS 503.055, in a dwelling, building or upon real property in his possession[.]" KRS 503.080(1)(a).

Further, the use of *deadly* force by a defendant is deemed justifiable "only when the defendant believes that the person against whom such force is used is . . . [c]ommitting or attempting to commit a burglary, robbery, or other felony involving the use of force, or under those circumstances permitted pursuant to KRS 503.055, of such dwelling[.]" KRS 503.080(2)(b). "A person is guilty of burglary in the third degree when, with the intent to commit a crime, he knowingly enters or

-7-

remains unlawfully in a building." KRS 511.040(1). Thus, "a dweller is privileged to use deadly force against unlawful entry for any criminal purpose (including petty theft and simple assault)." *Mondie v. Commonwealth*, 158 S.W.3d 203, 208 (Ky. 2005) (footnote and citation omitted).

The Kentucky Supreme Court has clarified the critical distinction between the privilege to use deadly force in the protection of oneself and the privilege of protection against burglary: "KRS 503.080(2)(b)'s privilege of protection against burglary is broader than the privilege to use deadly force in the protection of [one]self [under KRS 503.050], in that under [KRS 503.080(2)(b)] a defendant need not believe such force necessary to protect against death or serious physical injury[.]" *Id.* at 209-10 (internal quotation marks and footnote omitted).

Calhoun argues that the jury could have believed, from the evidence offered at trial, that Gerald entered Calhoun's home or remained in Calhoun's home with the intent to commit a crime, such as assault, thereby committing a burglary. If the jury found this to be the case, Calhoun would not have needed to prove he believed deadly force was necessary to protect against death or serious physical injury.

Certainly, the self-protection instruction that was provided to the jury included language which permitted the members of the jury to presume, if they believed that Gerald had unlawfully and forcibly entered Calhoun's dwelling, that

Calhoun had a reasonable fear of imminent peril of death or great bodily harm. But the provocation qualification removed the self-protection defense entirely if the jury believed that Calhoun had provoked Gerald to use physical force on him with the intent of causing death or serious injury to Gerald. An instruction on the privilege of protection against burglary, on the other hand, would have been unaffected by the provocation instruction.

The Commonwealth argues that Gerald's conduct did not meet the statutory definition of burglary because there was a delay between the time Gerald pushed his way into Calhoun's house, announcing he was there to fight, and the actual physical altercation between the two men. According to the Commonwealth, the evidence shows that, whatever he may have been shouting when he entered the home, Gerald had calmed down and did not intend to strike Calhoun until Calhoun provoked him.

The burglary statute does not specify that the intent to commit a crime must be manifested continuously and indefinitely. In any event, the evidence is by no means undisputed that Gerald's intent to commit a crime had dissipated. The evidence at trial could support a finding that Gerald entered Calhoun's home unlawfully with the intent to commit a crime, thereby committing a burglary. An instruction on the privilege of protection against burglary was fully supported by the facts of the case.

The Commonwealth's reliance on *Fuston v. Commonwealth*, 217

S.W.3d 892 (Ky. App. 2007) is misplaced as the facts of that case are significantly

distinguishable in several respects. Fuston and several others were in his sister's

apartment when her abusive boyfriend, Brown, arrived. Fuston and the others told

Brown to leave, but Brown kept advancing into the apartment. Fuston claimed

Brown threatened to kill him but the others did not recall Brown saying this.

Fuston pulled out a gun but Brown kept coming towards him and then reached for

the gun in his hand. Fuston shot him seven times and was subsequently convicted

of first-degree manslaughter.

Fuston claimed his attorney provided ineffective assistance for failing

to present evidence of the use of deadly force in protection against burglary. The

Court rejected the claim on several grounds. First, the jury would have been

required to find that Fuston believed Brown was about to commit burglary. Unlike

the case before us, in which it was undisputed that Gerald openly announced his

intent to attack Calhoun when he arrived at his home, the only evidence that Brown

made a threatening statement against Fuston was Fuston's own testimony. Second,

the jury would have been required to find that Fuston possessed the property

against which Brown's unlawful conduct was directed. There is no dispute that

Calhoun possessed the home which Gerald entered without permission. Third, the

jury would have had to find that Fuston had an immediate need to employ force to

prevent the unlawful conduct. In this case, Gerald initiated a physical attack on Calhoun whereas Brown was unarmed and there was conflicting evidence as to whether he threatened to kill Fuston.

Because the facts of Calhoun's case are significantly distinguishable, we cannot conclude on the basis of the evidence in the record that his counsel's decision not to pursue an instruction on the privilege of protection against burglary fell "within the wide range of reasonable professional assistance" or that "the challenged action might be considered sound trial strategy." *Id.* at 896 (internal quotation marks and citations omitted). For this reason, an evidentiary hearing is required.

The order of the Green Circuit Court denying Calhoun's RCr 11.42 motion is vacated as to the claim regarding the privilege of protection against burglary, and the case is remanded for an evidentiary hearing on this issue.

ALL CONCUR.

BRIEFS FOR APPELLANT:

Andrea Reed
Frankfort, Kentucky

BRIEF FOR APPELLEE:

Daniel Cameron
Attorney General of Kentucky

Jenny L. Sanders
Assistant Attorney General
Frankfort, Kentucky